PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MICHAEL WILLIAM LENZ,
      *Petitioner-Appellant,*

v.

GERALD K. WASHINGTON, Acting
Warden, Sussex I State Prison,
      *Respondent-Appellee.*

No. 05-16

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James P. Jones, Chief District Judge.
(CA-04-347-7-JPJ)

Argued: February 1, 2006

Decided: April 11, 2006

Before WILKINS, Chief Judge, and WILKINSON and
LUTTIG, Circuit Judges.

———————————————————————

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Chief Judge Wilkins and Judge Luttig joined.

———————————————————————

## COUNSEL

**ARGUED:** Jennifer Leigh Givens, VIRGINIA CAPITAL REPRE-
SENTATION RESOURCE CENTER, Charlottesville, Virginia, for
Appellant. Richard Bain Smith, Assistant Attorney General, OFFICE
OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Vir-
ginia, for Appellee. **ON BRIEF:** James C. Turk, Jr., STONE, HAR-

RISON & TURK, P.C., Radford, Virginia, for Appellant. Judith Williams Jagdmann, Attorney General of Virginia, Jerry P. Slonaker, Senior Assistant Attorney General & Chief, Richmond, Virginia, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

Michael Lenz was convicted of capital murder and sentenced to death for fatally stabbing a fellow inmate at a Virginia state correctional facility. His guilt is not in dispute. He now appeals the district court's denial of his federal habeas petition, seeking review of four alleged constitutional violations arising out of his state trial: denial of effective representation based on the location and conditions of his incarceration, ineffective assistance of counsel at sentencing, improper exclusion of evidence at sentencing, and juror use of a Bible during sentencing deliberations. We have reviewed these claims with care, and we affirm the judgment of the district court.

I.

On the evening of January 16, 2000, petitioner Michael Lenz joined Brent Parker, Jeffrey Remington, and three other inmates at the Augusta Correctional Center for a meeting of a group known as the "Ironwood Kindred." Petitioner was an adherent of a religion known as "Asatru," and intended to lead an Asatru ceremony at the meeting. Petitioner and Parker had a history of conflict relating to the practice of Asatru. According to petitioner, Parker and others had thwarted his efforts to form an official group within the prison devoted to Asatru, and Parker had threatened his life on two separate occasions. Petitioner admitted that he planned to kill Parker that evening.

The Asatru ceremony began with petitioner performing some ritual incantations, reciting poetry, and calling upon an Asatru deity. Petitioner then called Parker to the altar. After petitioner and Parker had a brief conversation, petitioner and Remington attacked Parker with knives. The ensuing commotion alerted the only correctional officer

present, who was stationed outside the meeting room. Through a window in the door, the officer observed petitioner and Remington repeatedly stabbing Parker, while Parker lay face-up on the floor between them "making a feeble attempt to defend himself" with his hands. The officer ordered them to stop, but they ignored him and carried on with their attack. He also called for backup, but did not attempt to intervene by himself because he was unarmed.

While the officer awaited assistance, petitioner and Remington continued their assault. The next officer to arrive observed Parker in a fetal position, making no attempt to defend himself, while petitioner stabbed him "over and over and over." This second officer also ordered petitioner and Remington to stop, but to no avail. Once sufficient additional personnel arrived, correctional officers entered the room and apprehended petitioner and Remington.

A prison nurse called to the scene found Parker alive, but in very critical condition. Despite her best efforts, Parker continued to bleed profusely, and he died at the Augusta Medical Center. An autopsy revealed that he had sustained sixty-eight stab wounds, all inflicted while he was still alive. These included seven stab wounds each to Parker's left lung and liver, either set of which would have been fatal even without his numerous additional injuries.

Petitioner was tried before a jury in Virginia state court and convicted of capital murder. *See* Va. Code Ann. § 18.2-31(3) (2004). At the penalty phase of the trial, the jury fixed his punishment at death, after finding each of two possible statutory aggravating factors: that his future violent acts "would constitute a continuing serious threat to society" and that his offense conduct "was outrageously or wantonly vile, horrible or inhuman." *Id.* § 19.2-264.2 (2004). On direct appeal, the Supreme Court of Virginia affirmed petitioner's conviction and sentence. *See Lenz v. Commonwealth*, 544 S.E.2d 299, 311 (Va.), *cert. denied*, 534 U.S. 1003 (2001).

Petitioner subsequently filed a state habeas petition, asserting several errors in his trial and sentencing. The Supreme Court of Virginia initially concluded that petitioner had received ineffective assistance of counsel at sentencing, and thus granted the petition in part, denied it in part, and remanded for resentencing. *See Lenz v. Warden*, 579

S.E.2d 194, 199 (Va. 2003). However, it granted the Common-wealth's motion for rehearing and issued a second opinion denying the petition in full. *See Lenz v. Warden*, 593 S.E.2d 292, 305 (Va.), *cert. denied*, 542 U.S. 953 (2004).

Petitioner thereafter filed a federal habeas petition in the district court for the Western District of Virginia, pursuant to 28 U.S.C. § 2254 (2000). The district court denied the petition, and also denied petitioner's subsequent motion to alter or amend its judgment. *See Lenz v. True*, 370 F. Supp. 2d 446, 450 (W.D. Va. 2005) (original order); *Lenz v. True*, 373 F. Supp. 2d 606, 607 (W.D. Va. 2005) (denial of motion). We granted a certificate of appealability on petitioner's claims.

Petitioner now presents four substantive constitutional claims for our review. Before we consider these four claims, we set forth the proper standard of habeas review and address petitioner's contention that the district court failed to apply it properly.

## II.

The federal habeas statute "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (internal quotation marks and citation omitted). The required deference encompasses both the state court's legal conclusions and its factual findings.

## A.

Where the state court has adjudicated a particular claim on the merits, federal habeas relief is appropriate only in two circumstances. The first occurs if the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistin-

guishable from a decision of [the Supreme Court] and nonetheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). "An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Rompilla v. Beard*, 125 S. Ct. 2456, 2462 (2005) (internal quotation marks omitted); *see also Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

The second circumstance where a federal court may grant habeas relief despite a state court decision on the merits is if the state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, in reviewing a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the habeas petitioner rebuts this presumption "by clear and convincing evidence." *Id.* § 2254(e)(1).

B.

The relation between § 2254(d)(2) and § 2254(e)(1) is a source of much dispute between the parties. Though he presents only one § 2254(d)(2) claim — relating to juror use of the Bible during sentencing — for our substantive review, petitioner pressed several such claims before the district court. He contends to us that the district court erred procedurally in applying the § 2254(e)(1) presumption of correctness in the course of adjudicating these claims. He points out, for example, that in assessing whether the state court's dismissal of his Bible claim rested upon an "unreasonable determination of the facts," the district court stated that it must "presume the state court's findings of fact to be correct unless the petitioner makes a clear and convincing showing to the contrary." *Lenz v. True*, 370 F. Supp. 2d at 461. Petitioner argues that § 2254(e)(1) has no place in the § 2254(d)(2) inquiry, and that statements such as this compel us to remand the district court's decision in its entirety.

Petitioner's argument is undercut by both Supreme Court precedent and our own. In *Miller-El v. Dretke*, the Supreme Court indicated that the two provisions interrelate:

[petitioner] may obtain relief only by showing the [state court's] conclusion to be "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). *Thus*, we presume the [state] court's factual findings to be sound unless [petitioner] rebuts the "presumption of correctness by clear and convincing evidence." § 2254(e)(1).

125 S. Ct. 2317, 2325 (2005) (emphasis added); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the inquiry on the merits is "whether the trial court's determination . . . was objectively unreasonable *and* has been rebutted by clear and convincing evidence to the contrary") (emphasis added); *Wilson v. Ozmint*, 352 F.3d 847, 858-60 (4th Cir. 2003) (applying § 2254(e)(1) in the context of determining whether relief was appropriate under § 2254(d)(2)). We therefore find no error in the district court's application of the § 2254(e)(1) presumption of correctness to the state court's factual findings.

Petitioner also contends that the district court erred by applying this presumption to the state court's entire decision, rather than just to the factual findings contained therein. We reject this contention as well. Even if certain statements taken in isolation might appear to be mistaken, we are confident that as a whole the opinion was not overly deferential to the state court. Contrary to petitioner's contention, the district court conducted a thorough and careful examination of the merits of petitioner's claims, consistent with the standards set forth in § 2254. We thus decline petitioner's suggestion that we remand the decision in its entirety on this basis, and turn to his four constitutional claims.

III.

Petitioner's first substantive claim alleges that he was denied effective assistance of counsel as a result of the circumstances of his detention prior to trial.

A.

For the first three months following Parker's murder, petitioner was incarcerated at Red Onion Prison, a super-maximum security

facility in Wise County, Virginia. His two appointed attorneys, however, were located in Waynesboro, Virginia, approximately 250 miles — and a five-hour drive — away. They visited him in prison only twice between January and April 2000. Each visit lasted only two hours, and the two lawyers could only converse with petitioner by means of a single phone.

In April 2000, petitioner's lawyers filed a motion with the trial court requesting that petitioner be transferred to a closer, non-maximum security facility, preferably to the nearby Augusta County Jail. The trial judge expressed skepticism as to his authority to interfere with prisoner classification or housing decisions made by the Virginia Department of Corrections. The prosecutor, however, had already discussed the issue with DOC officials and found that the DOC was able to move petitioner to a prison only 157 miles away from his lawyers. Petitioner was thus moved to Sussex I State Prison, though his counsel objected that this still required a drive of over three hours each way. Petitioner's counsel also requested and were granted a two-month continuance.

Even after this transfer, petitioner's attorneys continued to find their visits difficult. Under prison regulations governing inmates charged with violent crimes, visits were either "non-contact" — with petitioner behind glass and one phone for both lawyers — or else required the presence of a guard. Mental health and mitigation specialists allegedly had difficulty meeting with and performing certain tests on him due to the strictures of the non-contact visits. And on one visit, petitioner's counsel were told by a guard to leave after only thirty-five minutes. Upon being informed of this, the prosecutor again called the DOC to straighten out the situation; the duration of visits thereafter was not limited.

One week prior to the trial, which took place in July 2000, the trial court denied a motion by petitioner's counsel to dismiss the case based on counsel's difficulty gaining access to petitioner. The trial court took note of the fact that just that morning, petitioner had been transferred to the Augusta County Jail. Petitioner's attorney objected that he had desired to have petitioner at that facility from the beginning, but the trial court observed that the jail had been — and still was

— at double capacity, and expressed surprise that DOC had been able to make room for petitioner at all.

## B.

On direct appeal, petitioner argued that he had been "'denied effective assistance of counsel'" based on the location of his pre-trial detention. *Lenz v. Commonwealth*, 544 S.E.2d at 304 (quoting petitioner) (alterations omitted). The Supreme Court of Virginia construed this as an ineffective assistance of counsel claim, and declined to reach its merits on direct appeal because under Virginia law such claims are cognizable only on collateral review. *Id.* (citing *Johnson v. Commonwealth*, 529 S.E.2d 769, 781 (Va. 2000)).

In his state habeas petition, petitioner again raised a claim based on his pre-trial detention, this time alleging that the conditions had "'denied [him] his right to counsel at a critical stage of the proceedings.'" *Lenz v. Warden*, 579 S.E.2d at 198 (quoting petitioner's claim). The Supreme Court of Virginia construed this denial of counsel claim as substantively different from the ineffective assistance claim petitioner had raised on direct appeal. *See id.* This difference proved fatal: because a denial of counsel claim could have been brought on direct appeal, the court found the habeas claim to be procedurally defaulted. *See id.*

On federal habeas, petitioner raised precisely the same claim as he had on state habeas. *See Lenz v. True*, 370 F. Supp. 2d at 456. The district court declined to grant relief, finding that petitioner's claim had been barred under an adequate and independent state procedural rule, and that petitioner had not even attempted a showing of cause and prejudice to excuse the procedural default. *See id.* at 457-58; *Lenz v. True*, 373 F. Supp. 2d at 607-08 (denial of motion for reconsideration).

## C.

The question of procedural default is a close one, and is complicated by the fact that an ineffective assistance of counsel claim and a denial of counsel claim are related. *See United States v. Cronic*, 466

U.S. 648, 654 (1984) ("[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.") (internal quotation marks omitted). In order not to allow any semantic confusion to bar all federal review of petitioner's constitutional claims, we shall honor his request to treat his current claim as alleging that the limitations on attorney access denied him effective assistance of counsel. Because there is no state court judgment on the merits, we review de novo. *See, e.g.*, *Hudson v. Hunt*, 235 F.3d 892, 895 (4th Cir. 2000).

Even so, petitioner's claim fails to allege circumstances that would constitute ineffective assistance of counsel under the standard test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail under *Strickland*, a claimant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense" by "depriv[ing] the [claimant] of . . . a trial whose result is reliable." *Id.* Establishing the "prejudice" prong of the *Strickland* test requires a claimant to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694). This burden remains the same regardless of whether the alleged deficiency is counsel's own fault or arises due to "'external constraints.'" *Cronic*, 466 U.S. at 662 n.31.

Even if his attorneys' infrequent visits somehow rendered their performance "deficient," petitioner has not properly alleged that he was prejudiced by this deficiency. To be sure, he has raised general allegations that counsel and mental health and mitigation specialists were impeded from adequately investigating his case and preparing for trial. But he has provided "no explanation how additional meetings with his counsel, or longer meetings with his counsel, would have led to new or better theories of advocacy or otherwise would have created a 'reasonable probability' of a different outcome." *Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir. 2005). "[T]he mere fact that counsel spent little time with [petitioner] is not enough under *Strickland*, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003). Neither in his arguments here nor in the corresponding claim of his state habeas petition has petitioner identified a single fact that counsel or an expert failed to discover, let alone one

capable of convincing the jury that he did not repeatedly stab a defenseless victim or that doing so was not heinous and indicative of future dangerousness.* Thus, he "cannot establish an essential prerequisite for relief" under *Strickland*. *Hill*, 400 F.3d at 325.

Petitioner attempts to avoid this conclusion by invoking a narrow exception to the second *Strickland* prong, whereby "in certain limited contexts, 'prejudice is presumed.'" *Glover v. Miro*, 262 F.3d 268, 275 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 692). The caselaw has identified three such contexts, *see id.*, and petitioner has failed to state a claim that would qualify for per-se prejudice under any of them. First, he does not contend that there was simply "*no* lawyer . . . present at a critical stage of the proceedings," *id.* at 276 (emphasis added) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)), nor would the record support this.

Second, he does not present "the rare claim of ineffective assistance that is tantamount to a constructive denial of counsel," *id.* at 277. Such a situation arises only when a lawyer "'entirely fails to sub-

---

*Though it is not before us, we note that petitioner did raise an entirely separate claim on state habeas alleging various deficiencies in counsel's investigation and presentation of penalty-phase evidence. *See Lenz v. Warden*, 593 S.E.2d at 300-05. The state court carefully considered the alleged deficiencies, and found that none satisfied the *Strickland* test. *See id.* After extensive federal habeas review, the district court concluded that the state court's legal and factual determinations were reasonable. *See Lenz v. True*, 370 F. Supp. 2d at 472-90.

Petitioner has not appealed that conclusion, nor has he suggested in briefing or at argument that the deficiencies alleged in this separate claim stemmed from the conditions of his pre-trial detention. Indeed, the facts largely suggest otherwise. For example, the district court noted that "[t]he neuropsychologist was able to complete her evaluation . . . and competently presented the results of that evaluation to the mitigation specialist who, in turn, affirmed counsel's mitigation strategy." *Id.* at 474. And the state court found that "[t]here is no evidence that any of petitioner's experts told his counsel that they needed more time." *Lenz v. Warden*, 593 S.E.2d at 301. The state court moreover clarified that petitioner "does not assert that counsel were deficient in failing to investigate his background," and "is not asserting that counsel failed to engage in any investigation of [his] mental state." *Id.* at 302, 304.

ject the prosecution's case to meaningful adversarial testing,'" *id.* at 275 (quoting *Cronic*, 466 U.S. at 659), and thus "might as well be absent from the proceedings," *id.* at 277. Counsel's performance here came nowhere close to this sort of deficiency. Since counsel undeniably "served as an advocate" for petitioner and "tested the [Commonwealth]'s case through the adversarial system," petitioner "cannot show that he was constructively denied his right to counsel." *Id.*

Third, this case is not one where "'although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial,'" *id.* at 275 (quoting *Cronic*, 466 U.S. at 659-60). At most, petitioner alleges circumstances that may have made it somewhat more difficult for counsel to prepare for trial. But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Consequently, a claim alleging such a restriction cannot succeed without an accompanying allegation of prejudice. *See, e.g.*, *Cronic*, 466 U.S. at 649, 666 & n.41 (no presumption of prejudice when counsel had less than a month to prepare to defend complex mail fraud charges); *Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970) (no presumption of prejudice when counsel appeared only a few minutes prior to trial); *Glover*, 262 F.3d 271-72, 278-79 (no presumption of prejudice when counsel received defendant's file only two days before trial).

Since his circumstances do not give rise to prejudice per se, petitioner's failure to allege how the conditions of his detention actually affected his fair-trial right is fatal to his ineffective assistance claim. Nor is he entitled to an evidentiary hearing to explore how he may have been prejudiced. An evidentiary hearing is not a fishing expedition for facts as yet unsuspected, but is instead "an instrument to test the truth of facts *already alleged* in the habeas petition." *Jones v. Polk*, 401 F.3d 257, 269 (4th Cir. 2005) (emphasis added). Where, as here, a petitioner has not "allege[d] additional facts that, if true, would entitle him to relief," a hearing is unwarranted. *McCarver v. Lee*, 221 F.3d 583, 598 (4th Cir. 2000) (internal quotation marks omitted) (denying an evidentiary hearing on an ineffective assistance claim);

*see also Fullwood v. Lee*, 290 F.3d 663, 681 (4th Cir. 2002) (noting that a petitioner must also satisfy one of the six factors set forth in *Townsend v. Sain*, 372 U.S. 293, 313 (1963)).

D.

Were we to find petitioner's Sixth Amendment claim cognizable, we would risk countenancing significant and untimely intrusion by federal courts into the most routine matters of state prison administration. Federal habeas review is not the best context in which to determine the propriety of housing arrangements for state prisoners awaiting trial.

First, concerns of federalism and comparative expertise militate against federal court supervision of administrative decisions made by state departments of corrections. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," and "[w]here a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (internal quotation marks omitted). A state assigns prisoners to particular locations based on many criteria, including, but not limited to, prisoner dangerousness and the maximum capacity of each facility. The state moreover decides the geographic placement of prison facilities on the basis of public safety, feasible cost, and other practical considerations — high security facilities are not always located in population centers where trials are most likely to be held. Consequently, it may in some cases be difficult or dangerous for the state to alter the location or visitation conditions of a defendant's pre-trial detention, and federal courts should not lightly issue rulings that would require such changes. This case presents a particularly poor candidate for such a ruling; deference to state prisoner classifications is surely warranted where the prisoner in question stands accused of murdering a fellow inmate in a brutal and premeditated attack.

Second, collateral review is not a timely vehicle for addressing the type of problem of which petitioner complains. As the record here amply demonstrates, the appropriate time to address these concerns is before the trial. Commendably, petitioner's trial counsel did raise objections at that time. Equally commendably, the prosecutor was

helpful in arranging for petitioner to be housed in closer facilities and in assuring that the length of visitations would not be unduly restricted. Indeed, during the final week of trial preparations, petitioner was placed in the nearby Augusta County Jail, just as his counsel had requested. With a close perspective on the proceedings, the trial court was in the best position to ensure a fair trial. *Compare Jones v. Plaster*, 57 F.3d 417, 421 (4th Cir. 1995) (noting that deference to the trial court can be appropriate when "it has observed with its own eyes the very act in dispute"). Our ex post review, by contrast, can offer only the far-reaching remedy of an entirely new trial.

For these reasons, it is proper that we decline to expand *Cronic*, and limit our review of claims such as this to the objective criteria set forth in *Strickland*. Where counsel's difficulty gaining access to a defendant actually results in deficient performance that affects the reliability of trial, the *Strickland* test will be satisfied. But where, as here, no such effect has even been alleged, we cannot and should not grant relief.

## IV.

Petitioner's second claim also presents an ineffective assistance of counsel issue, alleging that his lawyers were constitutionally inadequate for failing to raise a state-law objection to the verdict forms given to the jury following the sentencing phase of his trial.

### A.

After the penalty-phase evidence had been submitted, the jury was provided with both oral instructions and written verdict forms explaining the different sentencing options available under Virginia law. While the oral instructions set forth the full range of possibilities, there is no dispute that the written verdict forms contained two material omissions. First, there was no option that would expressly allow the jury to find one or both aggravating factors and nevertheless impose a life sentence by determining them to be outweighed by mitigating evidence. Second, there was no option that would allow the jury to impose the statutorily authorized sentence of a fine up to $100,000 in addition to life imprisonment.

Petitioner's attorneys did not object to these omissions, nor did they raise the issue on direct appeal. However, the Supreme Court of Virginia sua sponte directed the parties on appeal to address whether the verdict forms violated its decision in *Atkins v. Commonwealth*, 510 S.E.2d 445, 456-57 (Va. 1999), a prior case in which it had vacated a death sentence based on a verdict-form omission. *See Lenz v. Commonwealth*, 544 S.E.2d at 311. But after the parties had briefed and argued the issue, the court ultimately declined to decide it on the merits. Instead, it found any possible verdict-form claim procedurally defaulted because petitioner had not raised the issue in the trial court or on appeal. *See id.*

Subsequent to its resolution of petitioner's appeal, the Supreme Court of Virginia decided *Powell v. Commonwealth*, 552 S.E.2d 344 (Va. 2001). The sentencing jury in *Powell* had received verdict forms materially identical to those used in petitioner's case, and the Supreme Court of Virginia found that these forms violated Virginia statutory law. *Id.* at 361-63.

On state habeas, petitioner claimed that his counsel was constitutionally ineffective for failing to object to the verdict forms in his case and in neglecting to raise the issue on appeal. The Supreme Court of Virginia initially agreed with petitioner and ordered a new sentencing hearing. *Lenz v. Warden*, 579 S.E.2d at 196-97, 199. But it subsequently granted the Commonwealth's motion for rehearing and found that the claim did not in fact merit relief. *See Lenz v. Warden*, 593 S.E.2d at 295.

The court emphasized that *Powell* was decided after petitioner's trial had ended, and concluded that counsel was not constitutionally ineffective for failing to object. *Id.* Whereas the verdict-form deficiency in *Atkins* had been the absence of an option allowing a life sentence "if *neither* of the aggravating factors was proven," the deficiency in petitioner's case was the absence of an option allowing a life sentence if "*one or both* aggravating factors" was proven. *Id.* (first emphasis added). The court noted that it had addressed the issue in petitioner's case "for the first time in *Powell*." *Id.* Citing our decision in *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995), the court concluded that "trial counsel could not have been ineffective for

failing to anticipate this Court's subsequent decision in *Powell*." *Lenz v. Warden*, 593 S.E.2d at 295.

Petitioner renewed his ineffective assistance claim in his federal habeas petition. *See Lenz v. True*, 370 F. Supp. 2d at 462-63. The district court denied the claim, concluding that it did not merit habeas relief under § 2254(d)(1). *Id.* at 464-67.

B.

As a threshold matter, we must determine the standard of review applicable to our consideration of petitioner's ineffective assistance claim. Petitioner emphasizes that his claim has two components: (1) failure to object to the absence of an option allowing the jury to impose a life sentence notwithstanding having found the existence of one or both aggravating factors, and (2) failure to object to the absence of a life-plus-fine option. Petitioner notes that in denying him habeas relief, the Supreme Court of Virginia expressly mentioned only the first of these. He thus urges that there was no adjudication on the merits of the life-plus-fine issue, and that we must therefore review it de novo. *See, e.g.*, *Hudson*, 235 F.3d at 895.

We cannot accept petitioner's suggestion. The standard of review set forth in § 2254(d) applies to "any *claim* that was adjudicated on the merits in State court proceedings" (emphasis added). Petitioner in his state habeas petition presented only one "claim" of ineffective assistance of counsel based upon the verdict forms. The single claim did note two separate omissions from the verdict forms, but petitioner's argument relied largely on a single case, *Powell*, for the proposition that both omissions constituted error. The Supreme Court of Virginia addressed his claim and squarely held that counsel's failure to anticipate *Powell* did not amount to ineffective assistance. *See Lenz v. Warden*, 593 S.E.2d at 295. Under these circumstances, we find no warrant to excise a particular aspect of petitioner's argument and isolate it for de novo review. *See also Quinn v. Haynes*, 234 F.3d 837, 844 n.8 (4th Cir. 2000) (finding state court had adjudicated both of two issues when both arguments were squarely before it, the cases it cited applied to both, and it denied relief). We thus review the state court's judgment under the standards of § 2254(d)(1), and will over-

turn it only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law."

## C.

We conclude that it is not. Petitioner presents two arguments why we should find otherwise, one relating to the Supreme Court of Virginia's reasoning and the other to the result it reached. We find them both to be without merit.

First, petitioner contends that we must grant relief because the Supreme Court of Virginia's opinion "failed to identify *Strickland v. Washington* as the controlling legal authority and failed to apply *Strickland*'s two-part test in resolving [his] claim." But satisfying the § 2254(d)(1) standard "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The state court's reasoning here hardly relied on an ipse dixit approach, but instead cited to our decision in *Kornahrens. See Lenz v. Warden*, 593 S.E.2d at 295. There, we examined numerous cases, including *Strickland*, and concluded that "the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." *Kornahrens*, 66 F.3d at 1360. Citation of *Kornahrens* was an entirely proper way to identify the governing principles of law and apply them to petitioner's case.

Second, petitioner contends in the alternative that the state court's result was "contrary to, or involved an unreasonable application of" *Strickland*. According to him, *Atkins* and existing statutory law were enough to put a constitutionally effective lawyer on notice to object to the verdict forms in his case, and the Supreme Court of Virginia was wrong to find otherwise. Thus, petitioner "essentially asks this court to reverse the Supreme Court of Virginia on the question of whether it was objectively unreasonable for an attorney in Virginia to fail to make an objection based purely on Virginia law. . . . [T]his is an issue on which our deference to the state court should be at its zenith." *Barnabei v. Angelone*, 214 F.3d 463, 471-72 (4th Cir. 2000), *abrogated on other grounds by Bell v. Jarvis*, 236 F.3d 149, 160 n.7 (4th Cir. 2000) (en banc).

We find nothing unreasonable in the state court's conclusion that it was only after *Powell* that counsel would have been on notice of the errors in petitioner's verdict forms. Petitioner has conceded that his verdict forms were "materially indistinguishable" from those in *Powell*. The forms in both cases copied their language essentially verbatim from a Virginia statute purporting to set forth the proper wording for death-penalty verdict forms. *See Powell*, 552 S.E.2d at 362. It was not until *Powell* that the Supreme Court of Virginia found that this statute was in fact trumped by another, more specific, statute prescribing the possible punishments for capital murder. *Id.* The court expressly noted that this result was "not controlled by *Atkins*," which had not presented the same issue. *Id.* at 363.

Petitioner nevertheless argues that *Atkins* stood for a broader proposition that should have led counsel to object in his case. According to him, "[t]he seemingly obvious rule that penalty-phase verdict forms must be consistent with the law and the jury instructions had existed at least since . . . *Atkins*." But even if this were now a proper statement of Virginia law, it was only in *Powell* that the Supreme Court of Virginia resolved exactly how verdict forms could be "consistent with the law" in light of the statutory conflict. And it was only in *Powell* that the court "extended" its reasoning from *Atkins* to conclude that verdict forms should contain "sentencing options that accurately and expressly correspond to the trial court's sentencing instruction." 552 S.E.2d at 363.

We consequently find that it was reasonable for the Supreme Court of Virginia to view *Powell* as "a new rule of law," and to find that petitioner's counsel was not ineffective for failing to anticipate it. *Kornahrens*, 66 F.3d at 1360.

## V.

Petitioner's third claim is that the trial court violated his Eighth and Fourteenth Amendment rights by excluding from the sentencing phase of his trial evidence that Parker, his victim, had been convicted of murder.

## A.

Prior to trial, the Commonwealth filed a motion in limine to exclude evidence regarding Parker's criminal record, which the trial

court granted. The issue arose again during petitioner's testimony at the penalty phase of his trial. Toward the beginning of direct examination, petitioner's counsel asked him, "What was Parker in the penitentiary for?" The prosecutor objected, and a discussion took place outside the presence of the jury. Petitioner's counsel argued that the fact of Parker's murder conviction should be allowed into evidence, because "it has something to do with why [petitioner] stabbed him . . . [a]nd how many times he stabbed him." The trial court, however, adhered to its earlier ruling on the motion in limine that the conviction was irrelevant.

The trial court expressly stated to petitioner's counsel that it was excluding only the conviction itself, and not petitioner's testimony regarding what "*he knew* about Parker" at the time of the attack (emphasis added). According to the trial court, if petitioner's counsel were to "put something in there first that's gonna — that's gonna bring in even a hint of self defense in this case, or something like that," it might then be possible to "get into the evidence [of] Mr. Parker's reputation for a turbulent disposition." Thus far, however, there was nothing in the record that "might call into question the relevance of Parker's disposition."

The jury returned and questioning resumed. Petitioner went on to testify that Parker had threatened to kill him on two separate occasions prior to his attack, and that "the reason I attacked him the way I did was because I was trying to do damage to him, without him doing damage to me." He further testified that he thought Parker was reaching for a weapon during the attack. But neither at this time nor at any other time following the colloquy with the trial court did petitioner's counsel attempt to introduce evidence regarding Parker's criminal record or petitioner's knowledge of it.

On direct appeal, petitioner argued that the exclusion of Parker's murder conviction from his sentencing hearing violated Virginia statutory law and the federal Constitution. *See Lenz v. Commonwealth*, 544 S.E.2d at 307. The Supreme Court of Virginia rejected both claims, finding that Parker's record was properly excluded because it "was not relevant and had no bearing on the [petitioner's] character, prior record, or the circumstances of [his] offense." *Id.* at 308. Petitioner renewed the constitutional claim in his federal habeas petition,

and the district court denied relief. *Lenz v. True*, 370 F. Supp. 2d at 470-72.

### B.

We agree with the district court that it was not contrary to, or an unreasonable application of, clearly established law for the Supreme Court of Virginia to uphold the trial court's state-law evidentiary ruling. We can accept neither of the two arguments petitioner raises in this regard.

First, petitioner contends that the state court violated the rule announced in *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality opinion). In that case, a plurality of the Court concluded that the Constitution generally requires that the jury in a capital case "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604 (footnotes and emphasis omitted); *see also Oregon v. Guzek*, 126 S. Ct. 1226, 1229 (2006) (same). The plurality expressly noted, however, that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett*, 438 U.S. at 604 n.12; *see also Guzek*, 126 S. Ct. at 1232 ("[T]he Eighth Amendment does not deprive the State of its authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted.").

It was, at a minimum, not unreasonable for the state court to conclude that the proffer of evidence in this case did not relate to petitioner's "character, prior record, or the circumstances of [his] offense." *Lenz v. Commonwealth*, 544 S.E.2d at 308. Petitioner's counsel sought to introduce Parker's conviction to explain "why [petitioner] stabbed him . . . [a]nd how many times he stabbed him." But the bare *fact* of Parker's criminal record — as opposed to petitioner's *knowledge* of it — bore no relation to either the purpose of petitioner's attack or the savagery with which it was carried out. *Compare Hutchins v. Garrison*, 724 F.2d 1425, 1437 (4th Cir. 1983) (denying habeas relief under *Lockett* where "[t]he petitioner ha[d] not shown how the excluded testimony would have been relevant").

Second, petitioner argues that the state court violated the "elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" *Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986) (quoting *Gardner v. Florida*, 430 U.S. 349, 362 (1977)). Petitioner notes that the prosecutor in his closing statement argued that petitioner "butchered" Parker "when he was helpless" and characterized the murder as "vile" as well as "absolutely horrible and inhuman." Petitioner contends that informing the jury of Parker's murder conviction was necessary to rebut this characterization, and to show that petitioner's criminal conduct "was not the result of a depraved mind, but the result of fear for his own personal safety."

But it is hardly unreasonable to conclude that petitioner did, in fact, have ample "opportunity to deny or explain" the Commonwealth's accusations. He took the stand and told the jury his side of the story, testifying that Parker had twice threatened him and that during the attack he thought Parker was reaching for a weapon. Petitioner argues to us that "evidence that [he] *knew* [Parker] to be a violent, convicted murderer," or that Parker bragged publicly about his past crimes, would have "significantly bolstered" his explanation for the savagery of his attack (emphasis added). This may well be true, but the trial court's ruling did not preclude petitioner from attempting to introduce such evidence. Instead, the trial court invited counsel to lay a proper foundation — which he had not yet done — and then raise the issue again. Petitioner's counsel never did so.

Thus, the effectiveness of the prosecutor's argument regarding the brutality of petitioner's crime was not predicated on any inability of petitioner to rebut. Instead, it was based on the fact that the evidence against petitioner was overwhelming: a premeditated attack resulting in sixty-eight stab wounds, many of which were inflicted while his victim lay defenseless on the ground. The trial court's narrow evidentiary ruling that the plain fact of the victim's criminal status was irrelevant to explain this conduct does not warrant federal habeas relief.

## VI.

Petitioner's final claim is that jurors made impermissible use of a Bible during sentencing deliberations, in violation of his Sixth Amendment right to an impartial jury.

## A.

On state habeas, petitioner alleged that jurors had consulted the Bible to aid in their capital sentencing decision. The Supreme Court of Virginia ordered the trial court to conduct an evidentiary hearing on this matter. At the hearing, individual jurors offered live testimony, and the parties submitted written affidavits based on prior juror interviews. The trial court accepted the former into evidence, but exercised its discretion under Virginia law to consider the latter only for purposes of witness credibility. *See* Va. Code Ann. § 8.01-660 (2000).

Following the hearing, the trial court issued a written report to the Supreme Court of Virginia containing its findings of fact and recommended conclusions of law. It found "that Juror Anita Durrette had at least one Bible and perhaps a 'Woman's Devotional' with her in the jury room during the deliberations in the penalty phase of the trial." It concluded that she was not an "opinionated, forceful juror," but was "troubled" by the "morality of voting to sentence a fellow human being to death" (internal quotation marks omitted). It further found

> that [the] Bible was open during deliberations, and that Ms. Durrette read from it. It is not clear that any other jurors read from the Bible, although there is some evidence, at least, that others looked at it. The Court will presume that any juror who looked at the Bible actually read it. The evidence does not disclose what passage or passages were read. The testimony of all the jurors testifying established that their verdict was based upon the evidence presented in Court and the law contained in the instructions given to them by the Court. There is no evidence to support a finding that the verdict was based, in any way, upon any passage to be found in the Bible.

The trial court consequently concluded that there was "no reasonable possibility" of improper influence, and recommended that petitioner's claim be denied.

The Supreme Court of Virginia adopted the trial court's recommendation. It considered the lower court's factual findings to be bind-

ing, and affirmed its refusal to consider the affidavits as substantive evidence. *See Lenz v. Warden*, 593 S.E.2d at 297, 299. Relying on *Remmer v. United States*, 347 U.S. 227 (1954), and *Stockton v. Virginia*, 852 F.2d 740 (4th Cir. 1988), the court determined that to prevail on his claim of improper influence, petitioner bore the burden of demonstrating that (1) an extraneous contact had taken place and (2) that "such contact was 'about the matter pending before the jury.'" *Lenz v. Warden*, 593 S.E.2d at 298 (quoting *Remmer*, 347 U.S. at 229). It concluded that petitioner had satisfied the first of these elements but not the second. *Id.* Because the trial court "found that there was no evidence of what Bible passages were read . . . petitioner did not establish that the 'contact' with the Bible was 'about the matter pending before the jury.'" *Id.* at 299.

The district court on federal habeas declined to overturn the state court's judgment. First, it rejected petitioner's suggestion that the state court's determination of the facts had been unreasonable. *See* 28 U.S.C. § 2254(d)(2). The Supreme Court of Virginia had inferred from the state trial court's evidentiary findings "that 'no evidence showed that jurors read Bible passages relating to the sentencing decision,'" and the district court found this inference to be "fairly supported by the record." *Lenz v. True*, 370 F. Supp. 2d at 462 (quoting *Lenz v. Warden*, 593 S.E.2d at 299). It also reasoned that the state trial court was in the best position to determine the credibility of the affidavits, and declined to hold that it had erred in excluding them. *Id.* Second, the district court concluded that the Supreme Court of Virginia had not unreasonably applied *Remmer*, agreeing with the state court that petitioner had failed to demonstrate that the "extraneous contact [was] 'about the matter pending before the jury.'" *Id.* at 460 (quoting *Remmer*, 347 U.S. at 229).

### B.

Our recent decision in *Robinson v. Polk*, 438 F.3d 350 (4th Cir. 2006), compels the conclusion that petitioner's claim does not merit relief. In *Robinson*, we considered the claim of a habeas petitioner who alleged that a bailiff had provided the jury with a Bible during the sentencing phase of his trial, and that a juror read aloud an "eye for an eye" passage before a final vote in an effort to persuade fellow jurors to opt for a death sentence. *Id.* at 358-59. The state court had

denied his Sixth Amendment claim without an evidentiary hearing, determining that even if the allegations were true, the defendant's rights had not been violated. *Id.* at 358.

After surveying *Remmer*, *Tanner v. United States*, 483 U.S. 107 (1987), and other relevant precedents, we concluded that — though we might reach a different result if we were to consider the issue de novo, *Robinson*, 438 F.3d at 363 — the state court's decision was not an "unreasonable application of" clearly established federal law, *id.* at 366. We based this conclusion on three alternative grounds. First, "it would have been reasonable for the [state] court to conclude that the Bible had no bearing on any fact relevant to sentencing," because "no Biblical passage . . . had any evidentiary relevance to the jury's determination of the existence of . . . aggravating and mitigating circumstances." *Id.* at 363 (footnote and emphasis omitted). Second, we found nothing in Supreme Court caselaw that would require the conclusion that the Bible is the type of "external influence" that permits the inner workings of the jury to be probed in a post-trial inquiry. *Id.* at 363-64. Third, we determined that the state court "reasonably could have concluded that the safeguards of the trial process . . . provide an adequate protection of a defendant's right to be sentenced by a jury free of improper influences such that a post-verdict examination into Bible reading is unnecessary." *Id.* at 364.

The logic and holding of *Robinson* dictate the result here, as we can find no distinction between the two cases that would merit a different outcome. Indeed, to the extent that there are distinctions, they cut against petitioner's claim for relief. Unlike the petitioner in *Robinson*, petitioner here has received a full evidentiary hearing from the state court. With respect to that hearing, we agree with the district court that the state court's factual findings were not unreasonable and that we should not overturn the trial court's exclusion of the affidavits. *See* 370 F. Supp. 2d at 462; *see also* 28 U.S.C. § 2254(d)(2). The findings at the hearing reveal circumstances less helpful to petitioner than those alleged in *Robinson*: a juror rather than a bailiff brought the Bible into the jury room, the juror did not appear to use the Bible to advance a pro-death penalty agenda, and there was no evidence that any passages were read that would relate to the sentencing decision. We consequently cannot find that petitioner's Bible claim merits habeas relief.

## VII.

For the foregoing reasons, the judgment of the district court denying a writ of habeas corpus is

*AFFIRMED*.