**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-19**

---

JERRY DALE HILL,

                                    Petitioner - Appellant,

        versus

MARVIN L. POLK, Warden, Central Prison,
Raleigh, North Carolina,

                                    Respondent - Appellee.

---

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. Malcolm J. Howard, Senior
District Judge. (5:02-hc-00041-H)

---

Argued: March 14, 2007                Decided: April 20, 2007

---

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Teresa Lynn Norris, BLUME, WEYBLE & NORRIS, L.L.C.,
Columbia, South Carolina, for Appellant. Jill Ledford Cheek,
Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF
JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Cynthia
Katkish, Washington, D.C., for Appellant. Roy Cooper, Attorney
General, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jerry Dale Hill ("Appellant") appeals the district court's denial of his petition filed under 28 U.S.C. § 2254 for relief from his conviction in North Carolina state court for first-degree murder and his resulting sentence of death. For the reasons that follow, we affirm.

I.

In February 1994, sixteen-year-old Angie Porter Godwin ("Godwin") came to Harnett County, North Carolina to visit her father. Appellant was acquainted with Godwin's brother, who lived nearby. On February 18, Appellant approached Godwin in a local store and asked her for a date. Godwin rejected his advances and, in Appellant's view, insulted him in front of several other people.

Early the next morning, Appellant entered Godwin's father's house armed with a gun. As he moved through the house, Appellant startled Godwin's dog. After she tried to quiet her dog, Godwin stepped from her bedroom into the hallway. Appellant then shot her twice and dragged her into the woods beside her father's house. Appellant raped and sexually assaulted Godwin before shooting her two more times. In an attempt to dispose of evidence of his crime, Appellant poured gasoline over Godwin's body and throughout her father's house, and set both on fire. He then went home, changed clothes, and disposed of the gun.

On the afternoon of the same day, Godwin's brother-in-law drove past Godwin's father's house and saw smoke issuing from the roof. He stopped and, after seeing blood on the front steps, called the fire department and police. Godwin's body was found shortly thereafter in the woods about 200 yards from the house. She was nude and covered with leaves and pine straw.

When interviewed by police officers later that day, Appellant denied any involvement in the crime. The following day, however, he admitted his role in the rape and murder. Subsequent investigation yielded the gun Appellant used, and semen matching Appellant's DNA was discovered in Godwin's vagina and rectum.

Following a jury trial in state court, Appellant was convicted of first-degree murder, first-degree rape, second-degree arson, felonious breaking or entering, and first-degree sexual offense. The state presented no new evidence during the sentencing phase of Appellant's trial. The defense, on the other hand, presented extensive mitigation evidence focusing on the difficult circumstances of Appellant's upbringing. Testimony was presented highlighting the extent to which Appellant had been neglected and abused by his parents, raised in extreme poverty, often homeless, and abandoned for long periods of time. Appellant's father told him that his mother was a prostitute to undermine his relationship with her. Frequently unbathed and "basically unsocialized," J.A. 35, Appellant was often tormented by his peers.

The defense also presented evidence from Claudia Coleman, Ph.D., an expert in clinical and forensic psychology who has testified in numerous capital trials. In preparation for trial, Dr. Coleman reviewed Appellant's records, interviewed him, and administered psychological tests. Her testimony at sentencing focused on Appellant's troubled educational and psychological history. Dr. Coleman concluded that Appellant suffered significant emotional and social alienation, and she testified at length regarding the origin and implications of these personality traits. Dr. Coleman, however, was not asked for and did not offer a specific diagnosis of Appellant's psychological problems.

At the close of evidence in the sentencing hearing, the trial court submitted four aggravating and forty-one mitigating circumstances to the jury. The trial court denied Appellant's request to instruct the jury on two additional mitigating circumstances: (1) whether Appellant was under the influence of mental or emotional disturbance at the time of his crimes, N.C. Gen. Stat. § 15A-2000(f)(2), and (2) whether his capacity to appreciate the criminality of his actions was impaired at the time of his crimes. Id. § 15A-2000(f)(6). The jury recommended a sentence of death after finding all four aggravating, but only five of the forty-one mitigating, circumstances. The trial court

accepted the recommendation and sentenced Appellant to death for Godwin's murder.[1]

After exhausting his direct appeals, Appellant filed a motion for appropriate relief ("MAR") in Superior Court ("state MAR court"). In his MAR, Appellant raised numerous claims, including several, which are at issue in this appeal, that his counsel at trial and sentencing ("trial counsel") was constitutionally ineffective. The state MAR court, however, denied relief. In ruling on the claims at issue here, the state MAR court found that each failed on the merits and, alternatively, that all but one was procedurally defaulted under N.C. Gen. Stat. § 15A-1420(b)(1).[2] Appellant petitioned for, but was denied, a writ of certiorari from the North Carolina Supreme Court for review of the denial of his MAR. State v. Hill, 354 N.C. 577 (2001). Appellant filed a petition for a writ of habeas corpus in the federal district court for the Eastern District of North Carolina. The district court

---

[1]The trial court also sentenced Appellant to two consecutive life sentences on the rape and sexual offense convictions, and consecutive sentences totaling fifteen years' imprisonment on the arson and breaking or entering convictions. Appellant does not challenge those convictions and sentences on appeal.

[2]Because the state MAR court adjudicated each of Appellant's claims at issue in this appeal on the merits, see 28 U.S.C. § 2254(d) (setting forth adjudication on the merits as a prerequisite to post-conviction relief for "person in custody pursuant to the judgment of a State court"), and we address each substantively herein, we need not reach the question of whether any was procedurally defaulted.

denied the petition and granted summary judgment to the state on each of Appellant's claims.  Appellant timely appealed.

## II.

Appellant argues that he is entitled to relief because the state MAR court both unreasonably applied clearly established federal law and unreasonably construed the factual record in rejecting claims that his trial counsel was constitutionally ineffective at sentencing.  We review Appellant's habeas claims de novo.  Buckner v. Polk, 453 F.3d 195, 198 (4th Cir. 2006).  However, because Appellant is "in custody pursuant to the judgment of a State court" and the state MAR court adjudicated his claims on the merits, our review is constrained by § 2254(d).  Under § 2254(d), Appellant is entitled to relief only if the state MAR court's adjudication of his claims either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).

> Under § 2254(d)(1), a decision

> is "contrary to" clearly established federal law if it either applies a legal rule that contradicts prior Supreme Court holdings or reaches a conclusion different from that of the Supreme Court on a set of materially indistinguishable facts.  A decision is an "unreasonable application" of clearly established federal law if it

6

"unreasonably applies" a Supreme Court precedent to the facts of the petitioner's claim.

Buckner, 453 F.3d at 198 (internal citations and quotations omitted). For purposes of § 2254(d)(2), a state MAR court's factual findings are to be presumed correct unless rebutted by clear and convincing evidence. Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006); see § 2254(e)(1).

Ultimately, our review must focus, within the constraints of § 2254, on whether the state MAR court correctly concluded that Appellant failed to state valid Sixth Amendment claims of ineffective assistance of counsel. To substantiate these claims, Appellant must demonstrate that (1) trial counsel's performance was deficient in that it fell "below an objective standard of reasonableness" in light of prevailing professional norms, Strickland v. Washington, 466 U.S. 668, 688 (1984); and (2) such deficiency prejudiced his defense in that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless [Appellant] makes both showings, it cannot be said that [his] . . . death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. In his § 2254 petition, as in his MAR, Appellant contends that trial counsel was ineffective (A) by failing to investigate and present mitigation evidence regarding physical and sexual abuse that he suffered as a child, and (B) by failing adequately to

7

prepare and examine Dr. Coleman on both a diagnosis for Appellant's psychological problems and the two mitigating circumstances rejected by the district court.  We consider each claim in turn.

A.

Appellant first requests relief on grounds that trial counsel failed to investigate and present mitigation evidence that he was physically and sexually abused as a child.  He bases this claim on affidavits filed with his MAR that allege the occurrence of such abuse.  The state MAR court denied relief after finding no deficiency in trial counsel's investigation and presentation of evidence regarding Appellant's upbringing, and no prejudice based on the jury's assessment of the mitigation evidence presented.  We likewise deny relief.

Even if we assume that there was sufficient evidence of the alleged abuse to warrant an investigation before sentencing,[3] we

---

[3]We note that Appellant has offered evidence of the alleged abuse that is largely indirect or speculative.  For example, a social worker who worked with Appellant when he was a teenager stated that she "had heard that [Appellant] was sexually abused" and "[t]he discipline [Appellant] suffered [at his father's hands] was more violent than it needed to be."  J.A. 194 (Affidavit of Sharon Leigh McDonald Bettini).  In Dr. Coleman's affidavit, she stated that "Post-conviction counsel has informed me that they have found evidence that [Appellant] was the victim of physical abuse" and "likely suffered from sexual abuse during his formative years." J.A. 201.  Further, Jennifer Miller, an investigator assigned by the state MAR court to assist in the post-conviction proceedings, stated that she "learned that [Appellant] suffered severe physical abuse" and "found evidence of [his] being sexually abused."  J.A. 190.  However, Appellant did offer an affidavit from his brother, David Hill, that contained some direct evidence that Appellant was physically abused by his step-father.

8

cannot conclude that trial counsel violated the Sixth Amendment by failing to do so. With respect to the deficiency prong of Strickland, trial counsel's investigation and presentation of Appellant's mitigation case was objectively reasonable. In capital cases, "counsel has a duty to make reasonable investigations or to make a reasonable decision" not to investigate. Strickland, 466 U.S. at 691. We "apply[] a heavy measure of deference to counsel's judgments," id., and begin with a presumption that "conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003).

Here, trial counsel conducted a thorough and detailed investigation that involved the production of numerous witnesses and amassed significant evidence regarding Appellant's upbringing. At sentencing, trial counsel presented the results of this investigation through extensive testimony recounting the horrific circumstances of Appellant's youth. Indeed, after examining Dr. Coleman at length about the psychological problems caused by Appellant's experiences, trial counsel elicited testimony that his was one of the worst cases of abuse and neglect that she had seen in her professional career. Trial counsel was under no duty to "uncover every scrap of evidence" from Appellant's past. Tucker v. Ozmint, 350 F.3d 433, 442 (4th Cir. 2003) (internal quotations omitted). So long as their actions and decisions were reasonable,

9

trial counsel complied with the Sixth Amendment guarantee of effective counsel. See Strickland, 466 U.S. at 691. Given the overall breadth and detail of trial counsel's investigation and presentation of Appellant's background, we cannot say that their actions fell "below an objective standard of reasonableness," 466 U.S. at 688, and, thus, were deficient for purposes of Strickland.

Nor do we find that Appellant has satisfied the prejudice prong of Strickland. The jury's assessment of Appellant's mitigation case militates against the notion that evidence of the alleged abuse would have produced a different outcome. To recommend a sentence of death in North Carolina, a jury "must unanimously find that mitigating factors do not outweigh aggravating factors." Buckner, 453 F.3d at 203. Therefore, to establish prejudice under Strickland, Appellant would have to "demonstrate a reasonable probability that at least one juror would have found that his new mitigating evidence, combined with the existing mitigating evidence, outweighed the aggravating circumstances surrounding [Godwin's] death." Id. The state MAR court found that Appellant could not meet this burden based on the jury's finding that the aggravating circumstances of his crime outweighed the little value the jury discerned in his mitigation evidence. In other words, the state MAR court found no probability that evidence of additional abuse would have swayed the jury's recommendation. We agree.

10

After hearing extensive testimony about Appellant's upbringing from his former stepmother, his brother, a social worker, and Dr. Coleman, the jury found no value in thirty-six of the forty-one mitigating circumstances it considered. On the other hand, the jury found value in each of the four aggravating circumstances presented. Appellant has offered no argument, case law, or facts to suggest that evidence of the alleged abuse would have carried weight sufficient to alter the jury's balance of these factors. Therefore, we cannot say that there is any meaningful probability, much less a reasonable one, that an investigation into and presentation of evidence of such abuse would have had any impact on the proceedings below. Because Appellant can establish no such probability, the state MAR court properly concluded that no prejudice was present for purposes of <u>Strickland</u>.

Ultimately, Appellant has not demonstrated that trial counsel was ineffective in investigating or presenting his mitigation case. Therefore, we find no basis to conclude that the state MAR court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law and deny relief.[4]

---

[4]We have reviewed and likewise find without merit Appellant's claim that trial counsel was ineffective in failing to investigate and present evidence that he used drugs as an adolescent. Trial counsel presented such evidence during Dr. Coleman's testimony, and the jury rejected its mitigating value. Appellant has failed to offer any argument or case law to demonstrate that the state MAR court's finding of no Sixth Amendment violation in this regard was contrary to or an unreasonable application of clearly established federal law.

B.

Appellant next requests relief on grounds that trial counsel failed to elicit from Dr. Coleman either a diagnosis of his psychological condition or corresponding testimony supporting the two mitigating circumstances rejected by the district court. Appellant bases this claim on Dr. Coleman's post-conviction affidavit wherein she states that, if she had been asked at sentencing, she would have testified that Appellant suffered from a severe personality disorder that supported both of the rejected mitigating circumstances.

The state MAR court denied relief on two grounds relevant here. First, it found that Dr. Coleman's affidavit lacked credibility because she had ample opportunity at sentencing to offer the testimony contained therein, but failed to do so. Second, the state MAR court found that Appellant demonstrated no deficiency in trial counsel's examination of Dr. Coleman and could not show that the testimony in her post-conviction affidavit would have altered the jury's recommendation. Appellant contends that these findings constitute an unreasonable determination of fact and are contrary to or an unreasonable application of clearly established federal law. We consider each argument in turn.

i.

Appellant first contends that the state MAR court unreasonably determined that the assertions in Dr. Coleman's post-conviction

12

affidavit lacked credibility.  This finding, however, is entirely consistent with the record and Appellant has not offered clear and convincing evidence to rebut the statutory presumption of its correctness, see § 2254(e)(1).

Dr. Coleman is an experienced professional psychologist who has appeared as an expert witness in numerous criminal matters.  She was retained in this matter specifically to evaluate Appellant's psychological health, assess his current mental status, and identify any psychological problems he might have.  To fulfill these duties, she conducted an extensive investigation into Appellant's background, administered numerous diagnostic tests, and interviewed Appellant on four occasions.

At trial, Dr. Coleman provided extensive testimony about Appellant's background, the psychological tests she performed, her interviews with Appellant, and his psychological problems.  Her testimony unfolded largely through open-ended questions that elicited narrative responses and provided few constraints on her ability to offer conclusions formed during her investigation.

Trial counsel's examination provided Dr. Coleman broad opportunity to offer the opinions contained in her post-conviction affidavit.  The fact that she failed to offer such testimony is inconsistent with her post-conviction assertion that she would have done so if only asked by trial counsel.  Appellant, on the other hand, has failed to offer evidence that clearly and convincingly

13

demonstrates that a witness as experienced as Dr. Coleman would withhold such critical testimony unless specifically and directly asked by trial counsel. Therefore, we find nothing unreasonable in the state MAR court's adverse credibility determination regarding Dr. Coleman's post-conviction affidavit.

ii.

Appellant next contends that the state MAR court's finding that trial counsel's examination of Dr. Coleman did not violate the Sixth Amendment was contrary to or an unreasonable application of Strickland.

With respect to the deficiency prong of Strickland, Appellant argues that the state MAR court erred by focusing on Dr. Coleman's failure to offer testimony, rather than trial counsel's failure to elicit it. We disagree. Although the state MAR court focused on Dr. Coleman when assessing the credibility of her post-conviction affidavit, it analyzed the effectiveness of her examination by focusing on trial counsel. Indeed, the state MAR court specifically held that Appellant had "failed to show that the manner by which his trial counsel elicited evidence from [Dr. Coleman] . . . was deficient or constituted ineffective assistance of counsel." J.A. 283. This analysis properly focused on trial counsel, rather than Dr. Coleman.

Further, the record supports the state MAR court's conclusion that trial counsel was not deficient. Trial counsel conducted a

lengthy and searching examination of Dr. Coleman that thoroughly conveyed to the jury the existence, origins, and effects of Appellant's psychological problems. Although her testimony stopped short of offering a discrete diagnosis, Dr. Coleman evinced sufficient preparation to, and, in fact, did convey the substantive import and relevance of Appellant's mental health issues. We, therefore, find no basis to conclude that the trial court's determination as to the deficiency prong was an unreasonable application of <u>Strickland</u>.

With respect to the prejudice prong, Appellant asserts that the state MAR court assigned unreasonable value to the jury's acceptance of the aggravating circumstances. Again, we disagree. In its order, the state MAR court merely found that, given that the jury balanced the sentencing factors in significant favor of the aggravating circumstances, there was no reasonable probability that additional testimony from Dr. Coleman would have produced a different outcome. This conclusion did not, as Appellant suggests, assign undue weight to the jury's acceptance of the aggravating circumstances. Indeed, the conclusion is well-supported by the record given the jury's near-absolute rejection of Appellant's mitigation evidence. Because Appellant cannot demonstrate that the additional testimony from Dr. Coleman would have altered the jury's balance of the sentencing factors, the state MAR court correctly

15

concluded that he could not establish prejudice for purposes of Strickland.

Ultimately, Appellant has not demonstrated that the state MAR court's rejection of his claim either resulted from an unreasonable determination of facts or was contrary to or involved an unreasonable application of clearly established federal law. Therefore, Appellant is not entitled to relief.

## III.

For the foregoing reasons, we conclude that Appellant's claims are without merit and we affirm the opinion of the district court.

AFFIRMED

16