Filed:  March 12, 2008

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-9
(2:05-cv-00340-RBS)

KEVIN GREEN,

                                    Petitioner - Appellant,

        versus

GENE M. JOHNSON, Director of the Virginia
Department of Corrections,

                                    Respondent - Appellee.

---------------------------------------------

THE AMERICAN ASSOCIATION ON INTELLECTUAL AND
DEVELOPMENTAL DISABILITIES; THE ARC OF THE
UNITED STATES; THE ARC OF VIRGINIA,

                                    Amici Supporting Appellant.

O R D E R

        The court amends its opinion filed February 11, 2008, as

follows:

        On page 16, second full paragraph, line 5 -- the phrase

"beyond a reasonable doubt" is deleted and replaced with the phrase

"by a preponderance of the evidence."

                                    For the Court - By Direction


                                     /s/ Patricia S. Connor
                                    Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KEVIN GREEN,

*Petitioner-Appellant,*

v.

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

*Respondent-Appellee.*

> No. 07-9

THE AMERICAN ASSOCIATION ON
INTELLECTUAL AND DEVELOPMENTAL
DISABILITIES; THE ARC OF THE UNITED
STATES; THE ARC OF VIRGINIA,

*Amici Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(2:05-cv-00340-RBS)

Argued: November 1, 2007

Decided: February 11, 2008

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Wilkinson joined. Judge Motz wrote an opinion concurring in the judgment.

**COUNSEL**

**ARGUED:** Michele Jill Brace, VIRGINIA CAPITAL REPRESEN-
TATION RESOURCE CENTER, Charlottesville, Virginia, for
Appellant. Matthew P. Dullaghan, Senior Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellee. **ON BRIEF:** Timothy M. Richardson, HUFF, POOLE &
MAHONEY, P.C., Virginia Beach, Virginia, for Appellant. Robert F.
McDonnell, Attorney General, Jerry P. Slonaker, Senior Assistant
Attorney General, OFFICE OF THE ATTORNEY GENERAL, Rich-
mond, Virginia, for Appellee. James W. Ellis, Norman C. Bay, Steven
K. Homer, April Land, Carol M. Suzuki, Albuquerque, New Mexico,
for Amici Supporting Appellant.

**OPINION**

SHEDD, Circuit Judge:

Kevin Green, a Virginia capital inmate, appeals the denial of his
petition for a writ of habeas corpus. The district court granted Green
a certificate of appealability ("COA") on two issues: (1) whether he
is mentally retarded so that his sentence is unconstitutional under the
Eighth Amendment as interpreted in *Atkins v. Virginia*, 536 U.S. 304
(2002), and (2) whether his trial counsel rendered ineffective assis-
tance by failing to appeal his non-capital convictions after the first of
his two trials. In denying relief, the district court concluded that
Green failed to prove he is mentally retarded under Virginia law and
that his ineffective assistance of counsel claim is untimely under 28
U.S.C. § 2244(d). For the following reasons, we affirm.

I

We begin with a summary of the facts pertaining to the underlying
crimes, as articulated by the Supreme Court of Virginia:

"The victim, Patricia L. Vaughan, and her husband, Lawrence T.
Vaughan, owned and operated a small grocery store in Brunswick
County. As part of their grocery store operation, the Vaughans regu-

larly cashed checks for employees of several nearby businesses, including a lumber company that paid its employees on Friday of each week. Consequently, Mr. Vaughan routinely went to a bank on Fridays to obtain sufficient currency to cash payroll checks for the lumber company employees. And, he did so on Friday, August 21, 1998. Upon returning from the bank on that Friday, he placed $10,000 in a bank bag that he kept in a cabinet underneath the cash register, another $10,000 elsewhere in the store, and the remaining cash in a safe.

"On the day in question, as Mr. Vaughan was starting to eat lunch and to file an invoice, two men entered the store. Mr. Vaughan saw them and recognized the taller of the two men as Kevin Green, the defendant. Green had worked for the lumber company for approximately eight to ten weeks during the preceding spring, and had frequented the Vaughans' grocery store at lunchtime, after work, and on Fridays to cash his payroll checks.

"When the two men entered the store, Mrs. Vaughan had her back to the door and was standing five or six feet from Mr. Vaughan. Thinking that the shorter man was going over to the 'drink box,' Mr. Vaughan turned around to finish his filing. As he did so, he heard his wife scream, 'Oh, God.' At trial, Mr. Vaughan described what he then heard:

> It was four bangs. Bang, bang and I was hit. I didn't know where I was hit, but I was hurt. I turned a complete turn and fell on the floor, sit [sic] down on my right foot and broke my right ankle. And about [the] time I went down, I looked up and I realized it was a gun being fired. I could see him, he shot toward my wife with the fourth shot. I saw his hand with a pistol in it. He was holding [it] like he was target practicing.

"Mr. Vaughan testified that Green, after firing the four shots, walked back to the door and stood there 'as a lookout' while the other man came around behind the counter and tried to open the cash register. When the drawer on the cash register jammed, Green directed the shorter man to look under the counter. Upon doing so, he found the bank bag containing approximately $9,000 in cash and Mr.

Vaughan's pistol, which he then used to shoot through the key hole in the cash register drawer. Taking the bank bag and the pistol, the shorter man exited the store, but Green walked a few steps over to where Mrs. Vaughan was lying on the floor and pointed the gun at her again. According to Mr. Vaughan, the gun misfired, and Green ejected a live cartridge onto the floor. Green then fired two more shots in the direction of Mrs. Vaughan. Lowering his head, Mr. Vaughan heard the gun 'snap' one more time, but he did not know whether Green was pointing the gun at him or his wife. Only then, when the gun was empty, did Green leave the store.

"After Green left, Mr. Vaughan dragged himself approximately five feet across the floor of the store to a telephone and dialed the '911' emergency number, but he was too weak to reach his wife who was still lying on the floor. One of the first police officers to arrive at the scene testified that he observed 'puddles of blood just pouring out of [Mrs. Vaughan's] nose, her mouth, [and] her head.' A local volunteer medical examiner determined that Mrs. Vaughan had died at the scene of the shooting.

"A subsequent autopsy of Mrs. Vaughan's body revealed that she sustained four gunshot wounds. One bullet penetrated the left side of her head, passed through the temporal and frontal lobes of her brain, and lodged in the inner frontal sinus of her face. Another bullet entered the right side of her chest and went into the upper lobe of her right lung. A third bullet penetrated the left side of her back. This was the only non-lethal wound. The fourth bullet entered the right side of Mrs. Vaughan's back and penetrated two lobes of her right lung. According to the forensic pathologist who performed the autopsy, Dr. Jose Abrenio, this wound caused hemorrhaging in her thoracic cavity, which led to difficulty in breathing and had the effect of suffocating her. Dr. Abrenio also opined that Mrs. Vaughan survived 'seconds to minutes' after she was first shot.

"Four days after the murder, a warrant was issued to search Green, his residence, and automobile. During the search of his home, six bullets were retrieved from the trunk of a tree in his yard. The bullets were found behind a 'makeshift target' hanging on the tree. Forensic testing on those six bullets and the four bullets recovered from Mrs. Vaughan's body during the autopsy revealed that all ten 'caliber 25

Auto full metal jacketed bullets' had been fired from one weapon. About 35 to 50 feet from the tree, 16 25-caliber empty cartridge casings were also recovered.

"After Green was arrested, he executed a form waiving his Miranda rights and agreed to be questioned by law enforcement officers. During that interrogation, Green admitted that he and his cousin, David Green, robbed the Vaughans' grocery store and that he selected their store because he knew the Vaughans kept a lot of money there. Green and his cousin had originally planned to wear masks to conceal their faces. However, they discarded the masks after they had to wait behind the store in their automobile for about an hour because other people were in the grocery store. Green also admitted that he shot both of the Vaughans, hitting Mrs. Vaughan four times." *Green v. Commonwealth*, 580 S.E.2d 834, 837-39 (Va. 2003) ("*Green v. Commonwealth II*").

## II

In June 2000, Green was convicted of the capital murder of Mrs. Vaughan during the commission of robbery; and of the non-capital crimes of robbery, malicious wounding of Mr. Vaughan, and three counts of illegal use of a firearm. The jury fixed Green's punishment at death for the capital murder conviction; life imprisonment for the robbery conviction; 20 years imprisonment for the malicious wounding conviction; and three years imprisonment for each of the firearms convictions. On October 6, 2000, the trial judge sentenced Green in accord with the jury's verdict. Green's trial counsel appealed his capital murder conviction and death sentence but not his non-capital convictions.

In June 2001, the Supreme Court of Virginia reversed Green's capital murder conviction and death sentence, holding that the trial judge abused his discretion by refusing to remove two potential jurors from the venire based on their lack of impartiality. *See Green v. Commonwealth*, 546 S.E.2d 446 (Va. 2001) ("*Green v. Commonwealth I*"). The supreme court concluded that one juror had formed a fixed opinion about the punishment Green should receive if convicted of the capital murder, and the other juror had formed a fixed opinion about the case based on pretrial publicity. Although this decision necessi-

tated a new trial on the capital murder charge, it did not affect Green's unappealed non-capital convictions. *See id.* at 447 ("Green did not appeal his non-capital convictions. Therefore, those convictions are not before this Court and are not affected by this opinion.").

Green's retrial occurred in the latter part of 2001, and a jury again convicted him of capital murder during the commission of robbery and fixed his punishment at death. Green's criminal record, including the non-capital convictions and sentences he received at the first trial, was presented to the jury during the sentencing phase of the retrial. In January 2002, the trial judge sentenced Green in accord with the jury's recommendation. In June 2003, the Supreme Court of Virginia affirmed Green's capital murder conviction and death sentence. *See Green v. Commonwealth II.* Pertinent to this appeal, the supreme court summarized evidence presented during the penalty phase of Green's second trial:

> The jury also heard evidence from Dr. Scott W. Sautter, an expert in neuropsychology who had tested Green's I.Q. on two separate occasions using two different tests, the "Wechsler abbreviated intelligence scale" and the "Wechsler [A]dult [I]ntelligence [S]cale [R]evised." Dr. Sautter testified that, while the formats of the two tests are similar, the "two tests are not exactly the same." Dr. Sautter reported that Green had a full-scale I.Q. score of 74 on the Wechsler Adult Intelligence Scale and a score of 55 on the "abbreviated" test. . . .

> Two clinical psychologists testified for the Commonwealth in rebuttal to Dr. Sautter's testimony. Dr. Lynda J. Hyatt reported that Green had an I.Q. score of 84 on the "Ammons & Ammons quick test," which placed Green in the category of "low average" mental functioning. Dr. Thomas A. Pasquale evaluated Green's personality as well as his intellectual functioning. Dr. Pasquale diagnosed depression, alcohol dependency, drug abuse, anti-social personality disorder, and malingering. According to Dr. Pasquale, Green had a full-scale I.Q. score of 74 on the Weschler Adult Intelligence Scale, placing him in the "borderline range" of intellectual functioning.

580 S.E.2d at 839-40 (alterations in original). On February 23, 2004, the Supreme Court of the United States denied Green's petition for a writ of certiorari. *See Green v. Virginia*, 540 U.S. 1194 (2004).

Green was represented by the same counsel for both of his trials and direct appeals. However, on June 26, 2003, Green was appointed new counsel to represent him on his state habeas petition, which was filed April 22, 2004. In that petition, Green asserted, *inter alia*, the two claims now before us: (1) he is mentally retarded and, therefore, his sentence violates the Eighth Amendment as interpreted in *Atkins*, and (2) his trial counsel rendered ineffective assistance by failing to appeal his non-capital convictions after his first trial.

On February 9, 2005, the Supreme Court of Virginia dismissed Green's state habeas petition. *See Green v. Warden of Sussex I State Prison*, No. 040932 (Va. Feb. 9, 2005) ("*Green v. Warden*"). The supreme court held that Green's ineffective assistance claim was untimely under state law:

> Petitioner is challenging his counsel's failure to appeal his non-capital convictions that became final on October 30, 2000. The provisions of Code § 8.01-654 state that a petition for writ of habeas corpus shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later. Any challenges petitioner wished to make regarding his appellate counsel's failure to appeal his non-capital convictions needed to be filed no later than October 30, 2002, or two years from the date of final judgment in the trial court on those charges.

*Green v. Warden*, at 2-3. The supreme court also held that Green failed to prove that his *Atkins* claim was not "frivolous" for purposes of Virginia Code § 8.01-654.2, which provides that the supreme court shall consider a claim of mental retardation filed under the statute and "if it determines that the claim is not frivolous, it shall remand the claim to the circuit court for a determination of mental retardation; otherwise, [it] shall dismiss the petition." The supreme court explained:

The legislature has defined mental retardation as:

> [A] disability, originating before the age of 18 years, characterized concurrently by (I) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills.

> Code § 19.2-264.3:1.1(A).

> This Court has previously held that the ceiling for a classification of mental retardation is an I.Q. score of 70. The record shows that Green was administered four standardized tests for measuring intellectual functioning. Green scored an 84 on the Ammons & Ammons quick test, a 74 on the Wechsler Adult Intelligence Scale, Third Edition, a 74 on the Wechsler Adult Intelligence Scale, Revised, and below a 70 on the Abbreviated Wechsler Adult Intelligence Scale. Based on these test scores, Green has failed to meet his burden of proving that his claim of mental retardation is not frivolous.

*Green v. Warden*, at 9-10 (internal citation omitted). Green thereafter filed a petition for rehearing, which the supreme court denied without comment on April 29, 2005. The Supreme Court of the United States denied Green's petition for a writ of certiorari (relating to his state habeas case) on December 5, 2005. *See Green v. True*, 546 U.S. 1066 (2005).

Green filed his federal habeas petition on December 1, 2005, naming Virginia Department of Corrections Director Gene M. Johnson as the respondent. Johnson moved to dismiss the petition, and the case was referred to a magistrate judge for the issuance of a report and recommendation. The magistrate judge held an evidentiary hearing and issued a thorough report, in which he recommended that the petition be denied and the motion to dismiss be granted. *See Green v. Johnson*, No. 2:05cv340, 2006 WL 3746138 (E.D. Va. Dec. 15, 2006)

("*Green v. Johnson I*"). Although the magistrate judge made several important subsidiary rulings in Green's favor, he ultimately concluded, *inter alia*, that (1) Green failed to prove that he is mentally retarded under Virginia Code § 19.2-264.3:1.1(A) and (2) Green's ineffective assistance of counsel claim is untimely under 28 U.S.C. § 2244(d). Both parties filed objections to the report. With one minor, irrelevant exception, the district court adopted the recommendation and dismissed the petition. *See Green v. Johnson*, No. 2:05cv340, 2007 WL 951686 (E.D. Va. Mar. 26, 2007) ("*Green v. Johnson II*").

The district court granted Green a COA on his *Atkins* and ineffective assistance of counsel claims, and although Green agrees with much of the district court's reasoning, he challenges the ultimate dismissal of his claims. Conversely, Johnson agrees with the ultimate dismissal of Green's claims, but he disagrees with some of the district court's reasoning, and he presents several alternate bases to support their dismissal.

III

We begin with Green's *Atkins* claim. We affirm the dismissal of this claim on two separate grounds.

A.

The Supreme Court held in *Atkins* that the Eighth Amendment prohibits the execution of the mentally retarded. The Court concluded that a national legislative consensus against the execution of mentally retarded offenders had developed, and it identified two reasons consistent with that consensus to justify a categorical exclusion of the mentally retarded from execution: (1) the justifications for recognizing the death penalty (*i.e.*, retribution and deterrence) do not apply to mentally retarded offenders; and (2) the diminished capacity of mentally retarded offenders places them at greater risk of wrongful execution. 536 U.S. at 316-21. The Court noted that "[t]o the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded." *Id.* at 317. Continuing, the Court observed that "[n]ot all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national

consensus;" however, instead of defining that range, the Court expressly left to the states the "'task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Id.* (quoting *Ford v. Wainwright*, 477 U.S. 399, 405 (1986)).

The Virginia General Assembly responded to *Atkins* by enacting a statutory scheme to determine capital defendants' claims of mental retardation. Pertinent to this case, the General Assembly mandated that a capital defendant has the burden of proving mental retardation by a preponderance of the evidence, Va. Code § 19.2-264.3:1.1(C), and it defined the term "mentally retarded" as:

> [A] disability, originating before the age of 18 years, characterized concurrently by (I) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills.

Va. Code § 19.2-264.3:1.1(A). Moreover, for persons such as Green who were sentenced to death before April 29, 2003, and who had not yet completed both their direct appeal and state habeas proceeding, the General Assembly directed the state supreme court to consider a claim of mental retardation and "if it determines that the claim is not frivolous, it shall remand the claim to the circuit court for a determination of mental retardation; otherwise, [it] shall dismiss the petition." Va. Code § 8.01-654.2.

Interpreting these state statutory provisions, the Supreme Court of Virginia has held that "[a] person is not 'mentally retarded,' within the meaning of Code § 19.2-264.3:1.1, unless that person meets the comprehensive definition of this statutory term," *Lewis v. Warden of the Fluvanna Correctional Center*, 645 S.E.2d 492, 507 (Va. 2007), and that an intelligence quotient ("IQ") score of 70 is the maximum score for a classification of mental retardation under the first prong of the statutory definition, *Johnson v. Commonwealth*, 591 S.E.2d 47, 59 (Va. 2004), *vacated on other grounds*, 544 U.S. 901 (2005); *see also Winston v. Warden of Sussex I State Prison*, ___ S.E.2d ___,

2007 WL 678266, at *15 (Va. Mar. 7, 2007) ("This Court has previously held that the maximum score for a classification of mental retardation is an I.Q. score of 70."). Furthermore, for purposes of § 8.01-654.2, "a criminal defendant who seeks to demonstrate . . . that his claim of mental retardation is not frivolous must be able to point to credible evidence in the record supporting the requirements set forth in the statutory test." *Johnson v. Commonwealth*, 591 S.E.2d at 59.

## B.

The district court dismissed Green's *Atkins* claim on the merits, concluding on a *de novo* review that although he met his burden of proof on the first prong of Virginia's statutory definition for mental retardation, he failed to meet his burden of proof on the second prong. Johnson contends that the district court should have deferred to the supreme court's decision under 28 U.S.C. §§ 2254(d) and (e) and dismissed this claim without conducting a *de novo* review. We agree.

"The federal habeas statute dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt. The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 10 (2006) (internal quotation marks and citation omitted). "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007). Thus, where the state court has adjudicated a claim on the merits, federal habeas relief is appropriate only if the state court's judgment resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1]

---

[1]This is the first case we have considered involving an *Atkins* claim that the Supreme Court of Virginia adjudicated. We have been presented with *Atkins* claims made by Virginia inmates in other cases, but those cases involved *de novo* federal consideration of the merits. *See Hedrick v. True*, 443 F.3d 342 (4th Cir.), *cert. denied*, 127 S. Ct. 10 (2006); *Walton v. Johnson*, 440 F.3d 160, 177-78 (4th Cir.) (*en banc*), *cert. denied*, 126 S. Ct. 2377 (2006); *Walker v. True*, 399 F.3d 315 (4th Cir. 2005).

A decision is contrary to the Supreme Court's clearly established precedents if the state court applied a rule that contradicts the governing law set forth in the Court's cases, or if it confronted a set of facts that is materially indistinguishable from a decision of the Court but reached a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A decision constitutes an unreasonable application of the Court's clearly established precedents if the state court applied the Court's precedents to the facts in an objectively unreasonable manner. *Id.* In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court of Virginia adjudicated Green's *Atkins* claim during his state habeas proceeding. The record presented to the supreme court included, *inter alia*, expert testimony from Green's two criminal trials concerning his I.Q. Dr. Pasquale, who was an expert witness for the Commonwealth, testified that he administered the Wechsler Adult Intelligence Scale, 3rd Edition ("WAIS-III") test to Green, who scored 74. Dr. Hyatt, who was also a Commonwealth expert witness, testified that she administered the Ammons and Ammons Quick Test to Green, who scored 84. Both of these witnesses testified that Green is not mentally retarded and that although it is possible for a person to fake a lower I.Q. score, it is not possible to fake a higher score. Dr. Sautter, who was an expert witness for Green, testified that he administered two I.Q. tests to Green: Green scored 55 on the Wechsler Abbreviated Scale of Intelligence ("WASI") and 74 on the Wechsler Adult Intelligence Scale - Revised ("WAIS-R"). Additionally, Dr. Sautter testified that Green is mentally retarded. Based on this evidence, the supreme court concluded for purposes of § 8.01-654.2 that Green had "failed to meet his burden of proving that his claim of mental retardation is not frivolous." *Green v. Warden*, at 10.

The magistrate judge concluded that the "Virginia Supreme Court correctly identified *Atkins* as the controlling opinion by the United States Supreme Court, but unreasonably applied *Atkins* to Green's case." *Green v. Johnson I*, 2006 WL 3746138, at *39. After noting that Green had scored below 70 on the WASI and that Dr. Sautter tes-

tified that Green is mentally retarded, the magistrate judge - referring to *Johnson v. Commonwealth* - explained:

> Because Green pointed to credible evidence supporting the requirements set forth in Virginia Code § 19.2-264:3.1.1(A), including the result of at least one IQ test that is two standard deviations below the mean, expert testimony that he is mentally retarded, and evidence of significant limitations in adaptive behavior, it was objectively unreasonable for the Virginia Supreme Court to find Green's claim of mental retardation to be frivolous under *Atkins*, and this Court will address the merits of Green's claim.

2006 WL 3746138, at *39. The district court agreed, stating that the magistrate judge "correctly concluded that the Supreme Court of Virginia unreasonably held that petitioner's claim of mental retardation was frivolous, which allowed the Magistrate Judge to conduct a *de novo* review of this claim." *Green v. Johnson II*, 2007 WL 951686, at *11.[2]

Applying the standard mandated by § 2254(d), we conclude that the supreme court's decision is entitled to deference. The supreme court correctly applied *Atkins* as the controlling precedent, and Green did not present a set of facts that is materially indistinguishable from a United States Supreme Court decision. Thus, the supreme court's

---

[2]In seeking rehearing on his state habeas petition, Green argued for the first time that his I.Q. scores should be adjusted for various theories of I.Q. measurement error, including the standard error of measurement ("SEM") and the "Flynn effect." *See generally Walton*, 440 F.3d at 177-78 (discussing these theories). Without comment, the state supreme court denied the rehearing petition. Although the district court held that the magistrate judge properly considered the Flynn effect and the SEM in its *de novo* consideration of Green's I.Q. scores, neither *Atkins* nor Virginia law appears to require expressly that these theories be accounted for in determining mental retardation status. *Cf. Winston*, 2007 WL 678266, at *15 (rejecting ineffective assistance of counsel claim premised, in part, on counsel's failure to present Flynn effect evidence). To the extent that we held in *Walker* that the district court was required to consider the Flynn effect on remand, that case involved *de novo* consideration of the inmate's *Atkins* claim.

decision is not "contrary to" clearly established federal law. More-over, the pertinent underlying facts identified by the supreme court (*i.e.*, Green's I.Q. scores) are not disputed. We are thus left with the question of whether the supreme court applied *Atkins* in an objectively unreasonable manner.

Stated succinctly: the supreme court found that three of Green's four I.Q. test scores exceed the maximum score of 70, and evidence in the state habeas record established that although a person can fake a lower I.Q. score, a higher I.Q. score cannot be faked.[3] Based on this record, we do not believe that the supreme court applied *Atkins* in an objectively unreasonable manner by discrediting, as it implicitly did, Green's WASI score of 55 (along with Dr. Sautter's opinion) and then concluding under state law that Green failed to present sufficient credible evidence supporting the requirement in the first prong of the Commonwealth's statutory test for mental retardation. *See Woods v. Quarterman*, 493 F.3d 580, 584-87 (5th Cir. 2007) (holding that where the petitioner had four I.Q. scores above 70 and one score below 70, the state court was not unreasonable in concluding that the petitioner failed to prove that he suffered from subaverage intellectual functioning). For this reason, Green is not entitled to relief under § 2254, and we affirm the dismissal of this claim.[4]

---

[3]We recognize that the parties dispute the relevance and/or legitimacy of some of these tests; however, the supreme court appears to have considered all of them in its analysis. We also note that although it was not part of the state habeas record, Green scored 71 on the Wechsler Intelligence Scale for Children - Revised ("WISC-R") when he was 13 years old.

[4]With respect for our concurring colleague's view, we believe that the district judge correctly stated that the magistrate judge conducted a *de novo* review of Green's *Atkins* claim. As set forth above, the magistrate judge first found the state supreme court's conclusion that Green's *Atkins* claim was frivolous under state law to be unreasonable within the meaning of § 2254. The magistrate judge based this decision on the pleadings rather than on the evidence presented during the evidentiary hearing, and he then proceeded to consider this evidence in the context of a *de novo* review. *See Green v. Johnson I*, 2006 WL 3746138, at **37-39 (holding that the supreme court's frivolousness determination is unreasonable) and at **39-49 (discussing the evidence produced during the evidentiary

## C.

As noted, the district court did not defer to the supreme court's decision. Instead, the district court conducted a *de novo* review of Green's *Atkins* claim and concluded, *inter alia*, that he failed to meet his burden of proof on the second prong of Virginia's statutory definition of mental retardation — *i.e.*, that he has "significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills." Because Green must prove both prongs of Virginia's statutory definition for mental retardation in order to establish that he is mentally retarded, *Lewis*, 645 S.E.2d at 507, the district court dismissed this claim. We affirm the dismissal of Green's *Atkins* claim on this basis as well.[5]

In considering the district court's *de novo* determination on the second prong, we review its legal conclusions *de novo*, *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003), and its factual findings under the highly deferential clearly erroneous standard set forth in Rule 52(a) of the Federal Rules of Civil Procedure, *Walton*, 440 F.3d at 173. Where, as here, the magistrate judge conducted the evidentiary hearing, we review the district court's findings, rather than the magistrate judge's recommendations. *Monroe*, 323 F.3d at 299. In this case, these are essentially one and the same because the district court adopted the magistrate judge's pertinent findings and recommendation. *See Green v. Johnson II*, 2007 WL 951686, at * 11 ("After reviewing the entire record . . ., examining all of the objections filed by respondent and petitioner, and making *de novo* findings with respect to the portions objected to, this court finds no error in law or

---

hearing and holding that Green met his burden of proving the first prong of Virginia's statutory test for mental retardation). To the extent that it is relevant, we note that Green shares our assessment on this point. *See Reply Brief of Petitioner-Appellant*, at 6 ("Having found the frivolousness decision unreasonable, the district court correctly accorded Green's claim the *de novo* review it would have merited prior to AEDPA.").

[5]The district court concluded that Green met his burden of proof on the first prong of the statutory definition. Because we agree with the district court's determination on the second prong, which is dispositive, we need not address the district court's *de novo* ruling on the first prong.

fact in the Magistrate Judge's thorough analysis of [the mental retardation claim].").

The magistrate judge correctly recognized that "[a]ssessment of adaptive behavior shall be based on multiple sources of information, including clinical interview, psychological testing and educational, correctional and vocational records," Va. Code § 19.2-264.3:1.1(B)(2), and he utilized the American Association of Mental Retardation's ("AAMR") standards for measuring adaptive skills. The magistrate judge set forth in detail the expert testimony presented by both sides at the evidentiary hearing and explained his findings and conclusions with respect to Green's adaptive skills. *Green v. Johnson I*, 2006 WL 3746138, at **49-59. We briefly summarize these findings and conclusions.

The magistrate judge noted that according to the AAMR, conceptual adaptive skills involve skills pertaining to language, reading and writing, money concepts, and self-direction, and he concluded that although the evidence suggested that Green's conceptual adaptive skills are below average, Green failed to prove by a preponderance of the evidence that he has significant limitations. The magistrate judge based this determination on evidence that Green had: (1) conversed freely while being interviewed and shared his opinion about his mental health diagnosis and his understanding of the status of his case; (2) requested sophisticated books from the prison library and completed a form on which he effectively explained a mistake with the prison commissary; (3) displayed an understanding of money concepts by handling his own money, having a savings account, paying his own rent, engaging in transactions with money orders, and profiting from dealing drugs; and (4) engaged in self-direction by doing such things as obtaining a driver's license, concealing much of his criminal activity from his family, and requesting a copy of his release of medical records (which is indicative of independent participation in the direction of his case). *Id.* at 58.

The magistrate judge then noted that according to the AAMR, social adaptive skills are measured by interpersonal skills and responsibility, self-esteem, gullibility and naivete, and ability to follow rules and obey laws. The magistrate judge concluded that Green was unable to show, by a preponderance of the evidence, significant limi-

tations in his social adaptive skills because Green: (1) although socially awkward, was nonetheless regarded as a "good guy" who liked to joke around; (2) had girlfriends; (3) was regularly employed and was often regarded as a good employee who showed a level of responsibility beyond that expected of someone with significant limitations; (4) displayed personal responsibility for his financial needs by profitably distributing drugs; and (5) was manipulative. The magistrate judge also considered Green's propensity for ignoring rules and the law, but found "the extent to which his behavior is attributable to his intellectual deficits [to be] unclear." *Id.* at 59.

Finally, the magistrate judge noted that according to the AAMR, practical adaptive skills involve activities relevant to daily living, occupational skills, and maintenance of a safe environment; and he concluded that Green failed to meet his burden of proving significant limitations in these skills by a preponderance of the evidence. The magistrate judge explained:

> Green's evidence portrayed him as having mobility issues and difficulty dressing himself appropriately, cleaning his house, and cooking for himself. Much of this evidence was contested, however. For instance, it is uncontroverted that Green was able to acquire a driver's license and navigate public transportation systems. Also, Green's mother and sister, who both stated in their declarations that Green had difficulty caring for himself, previously testified at trial that he could care for himself. Finally, Green's employment experiences in restaurants show that he was able to cook and use the telephone.

> With respect to his occupational skills, Green showed that his various jobs always required low-level skills and low education and that he was usually hired with help from family and friends. He was also shown to have difficulty retaining jobs. Three former employers, however, described Green as an average to above average employee. In fact, he received a merit-based promotion at one job, an accomplishment that does not suggest significant limitations in occupational skills.

*Id.*[6] (internal citations omitted).

In light of these findings and conclusions, the magistrate judge recommended denial of Green's *Atkins* claim. The district court accepted this recommendation, explaining:

> Despite presenting evidence that he displays *some* limitations in adaptive behavior, including having below average mental intelligence, struggling to perform some basic activities, and exhibiting anti-social behavior, petitioner has failed to demonstrate, within the three subsets of adaptive behavior, that he suffers *significant* limitations. The Magistrate Judge thoroughly considered the limitations of petitioner's adaptive behavior, as presented by expert testimony and evidence, yet persuasively and correctly concluded that petitioner simply failed to establish significant limitations, based upon evidence, in part, of petitioner's employment history, use of language, understanding of money concepts, self-direction, and relationships with others.

*Green v. Johnson II*, 2007 WL 951686, at *12 (internal citation omitted) (emphasis in original). Having carefully considered the parties' arguments and the district court's ruling under the aforementioned standard of review, we find no error in the district court's findings and conclusions. Indeed, we believe that the district court's (and magistrate judge's) consideration of the evidence was thorough, its findings are amply supported by the evidence, and Green's challenges to the district court's rulings are without merit. Accordingly, we affirm the denial of Green's *Atkins* claim for this reason as well.

## IV

We now turn to Green's ineffective assistance of counsel claim, which is premised on his trial counsel's failure to appeal the non-capital convictions after his first trial. That trial concluded in October 2000; Green filed his § 2254 petition on December 1, 2005. Accepting the magistrate judge's recommendation, the district court held that

---

[6]The magistrate judge did find that Green had presented uncontested evidence of limitations maintaining a safe environment.

this claim is time-barred under 28 U.S.C. § 2244(d), which establishes a one-year limitation period for an inmate to file a § 2254 petition. We agree with this conclusion.[7]

### A.

Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Although Green's non-capital convictions became final on or about November 6, 2000,[8] the district court found that Green faced an

---

[7]Preliminarily, the district court rejected Johnson's argument that this claim is procedurally defaulted because the state supreme court held it was untimely for state habeas review. *Green v. Johnson II*, 2007 WL 951686, at **4-5. In light of our disposition of this claim, we express no opinion on this aspect of the district court's ruling.

[8]In denying the state habeas petition, the supreme court stated that Green's non-capital convictions became final on October 30, 2000. *Green v. Warden*, at 2. However, Johnson asserts that those convictions actually became final on November 6, 2000. *Brief of Respondent-Appellee*, at 53 n.18. For purposes of this case, the discrepancy is immaterial.

impediment to filing his petition until June 26, 2003, when the Commonwealth appointed new counsel to represent him in his state habeas proceeding — the impediment being Green's ongoing representation by his allegedly ineffective trial counsel. Accordingly, the district court concluded under § 2244(d)(1)(B) that the starting date for the limitation period is June 26, 2003. *Green v. Johnson II*, 2007 WL 951686, at *6.

The district court next considered whether, under § 2244(d)(2), the one-year limitation period must be tolled for the period of April 22, 2004, to April 29, 2005, when Green's state habeas proceeding was pending. Section 2244(d)(2) provides that the limitation period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." The district court determined that statutory tolling for this period is inappropriate because § 2244(d)(2) permits tolling only when a "properly filed application" for state habeas relief is filed, and Green's state habeas petition was not properly filed with respect to his ineffective assistance of counsel claim because that claim was procedurally defaulted. *Green v. Johnson II*, 2007 WL 951686, at *6. Alternatively, the district court held that this claim is untimely even with the benefit of tolling under § 2244(d)(2). *Green v. Johnson II*, 2007 WL 951686, at *6 n.14.

Finally, the district court considered whether Green is entitled to equitable tolling. We have held that § 2244 allows for equitable tolling in those "'rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling, a habeas petitioner must show that (1) he has pursued his rights diligently and (2) some "extraordinary circumstance" prevented him from filing in a timely manner. *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007).[9] The district court concluded

---

[9]In *Lawrence*, the Court noted that it has "not decided whether § 2244(d) allows for equitable tolling," but it nonetheless applied the doctrine because the parties agreed that it was available. 127 S. Ct. at 1085.

that Green failed to establish the requisite diligence because ten
months elapsed between June 26, 2003 (when habeas counsel was
appointed), and April 22, 2004 (when he filed his state habeas peti-
tion). *Green v. Johnson II*, 2007 WL 951686, at *7.

### B.

We review the district court's application of § 2244(d) *de novo*.
*Frasch v. Peguese*, 414 F.3d 518, 521 (4th Cir. 2005). Where, as here,
the relevant facts are undisputed and the district court denied equita-
ble tolling as a matter of law, we also review that decision *de novo*.
*Rouse*, 339 F.3d at 248. Having reviewed the district court's decision
in this manner, we find no error.

The alleged ineffective assistance of counsel — *i.e.*, the failure of
Green's trial counsel to file an appeal of the non-capital convictions
— occurred in November 2000. Likewise, those convictions became
final no later than November 6, 2000. In our view, the limitation
period started to run *no later* than June 26, 2003, when habeas coun-
sel was appointed for Green. At that time, the purported impediment
that prevented Green from filing a habeas petition was removed.
Moreover, trial counsel's failure to appeal the non-capital convictions
had been public knowledge for at least two years and therefore could
have been discovered through the exercise of due diligence. *See, e.g.*,
*Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003) (holding that the
limitation period was triggered under § 2244(d)(1)(D) on the date that
the inmate could have discovered factual predicate of his claim
"through public sources").

Starting on June 26, 2003, 301 days passed until April 22, 2004,
when Green filed his state habeas petition. Because we agree with the
district court that Green is not entitled to equitable tolling, even if we
accept Green's argument that he is entitled to statutory tolling while
his state habeas petition was pending, that tolling period would have
ended on April 29, 2005, when the state supreme court denied his
petition for rehearing.[10] From April 29, 2005, when the filing clock

---

[10]Although Green's petition for certiorari review of the denial of his
state habeas petition was pending until December 5, 2005, "§ 2244(d)(2)
does not toll the 1-year limitations period during the pendency of a peti-
tion for certiorari." *Lawrence*, 127 S. Ct. at 1083.

again began to run, until December 1, 2005, when Green filed his federal habeas petition, 216 more days passed. Thus, Green filed for federal habeas relief on his ineffective assistance of counsel claim well beyond the one-year limitation period. Accordingly, the district court correctly dismissed this claim.

V

Based on the foregoing, we affirm the district court's order denying Green's habeas petition.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the judgment and most of the majority opinion. I cannot join Part III B or portions of Part III C, which hold that the district court erred in not deferring to the opinion of the Supreme Court of Virginia, as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), (e) (2000). Although not entirely clear, and notwithstanding the district court's somewhat misleading statement that the magistrate judge (whose report the district judge adopted) conducted a "*de novo* review," it seems to me that the magistrate judge actually did defer to the state court. *Green v. Johnson*, No. 2:05CV340, 2007 WL 951686, at *11 (E.D. Va. Mar. 26, 2007). The magistrate judge properly granted an evidentiary hearing under § 2254(e)(2) of AEDPA, recognized that the state court's factual findings were entitled to a "presumption of correctness," but found them rebutted "by clear and convincing evidence" in accord with § 2254(e)(1) of AEDPA. This conclusion required the magistrate judge then to address additional requirements of Virginia's statutory definition of mental retardation that the state court had not been required to reach. Only for that reason and in that sense did the magistrate judge conduct a "*de novo* review." This phrase should not hide the fact that the magistrate judge did properly defer to the state court in full conformity with AEDPA.

Specifically, prior to granting any evidentiary hearing, the magistrate judge made extensive findings, as required by AEDPA, that (1)

under *Williams v. Taylor*, 529 U.S. 420, 432 (2000), Green had diligently developed the factual basis of his claim to the extent practicable in the state habeas proceeding — by repeatedly requesting an evidentiary hearing to develop his *Atkins* claim — so that § 2254(e)(2) did not prevent the grant of an evidentiary hearing; (2) Green presented sufficient additional factual allegations in his habeas petition, which, if true, would entitle him to relief; and (3) Green satisfied the requirements of *Townsend v. Sain*, 372 U.S. 293, 313 (1963), as to when an evidentiary hearing may properly be granted to a habeas petitioner. *See Green v. Johnson*, 431 F. Supp. 2d 601, 608-17 (E.D. Va. 2006); *see also Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006) (summarizing the requirements for granting an evidentiary hearing after AEDPA). The magistrate judge's approach in granting the evidentiary hearing fully accorded with our past holdings regarding the appropriate deference due to state courts under AEDPA.

The magistrate judge's report recommending that the district court deny Green's habeas petition similarly accords the state court opinion the required deference. In making his recommendation, the magistrate judge initially and correctly recognized that, under § 2254(e)(1), the factual determinations of the state court were presumed to be correct unless Green "rebutt[ed] the presumption of correctness by clear and convincing evidence." *See Green v. Johnson*, No. 2:05CV340, 2006 WL 3746138, at *39 (E.D. Va. Dec. 15, 2006); *see also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Lenz v. Washington*, 444 F.3d 295, 300-01 (4th Cir. 2006). The magistrate judge then rejected the state court's finding on the "significantly subaverage intellectual functioning" prong of the definition of mental retardation. It is not completely clear whether the magistrate judge based this determination solely on the arguments presented by Green in his state court pleadings, but what is entirely clear is that the magistrate judge was not restricted to these pleadings by AEDPA, especially after having properly conducted the evidentiary hearing under § 2254(e). Certainly the extensive evidence presented during the three-day evidentiary hearing offered a "clear and convincing" rebuttal to the presumption of correctness afforded the state court's findings and provided the proper basis for the magistrate judge's decision. 2006 WL 3746138 at *38-49.

The magistrate judge then considered whether Green satisfied the second prong of Virginia's statutory definition of mental retardation,

namely, that Green possess "significant limitations in adaptive behavior." Va. Code Ann. § 19.2-264.3:1.1(A) (2007). Because the Supreme Court of Virginia had not addressed whether Green satisfied this prong, the magistrate judge was forced to address the issue in the first instance (and so in this respect "*de novo*"). For the reasons stated by the majority in Part III C, the magistrate judge properly held that Green had not met his burden on this prong and so the state court had properly determined that Green did not meet the definition of mental retardation.