CORRECTED OPINION

UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-20

WADE LARRY COLE,

Petitioner - Appellant,

v.

GERALD J. BRANKER, Warden, Central Prison, Raleigh, North
Carolina,

Respondent – Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Dever III,
District Judge.  (5:05-hc-00461-D)

Argued:  September 25, 2008        Decided:  November 3, 2008

Corrected Opinion Filed:  December 11, 2008

Before WILKINSON, MICHAEL, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Michael wrote the
opinion, in which Judge Wilkinson and Judge Shedd joined.

**ARGUED:** Marilyn G. Ozer, William F. W. Massengale, MASSENGALE &
OZER, Chapel Hill, North Carolina, for Appellant.  Alana
Danielle Marquis Elder, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Roy Cooper,
Attorney General of North Carolina, Raleigh, North Carolina, for
Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

MICHAEL, Circuit Judge:

Wade Larry Cole was convicted in North Carolina of first degree murder and involuntary manslaughter. He was sentenced to death on the murder charge. The convictions and sentence arise out of his 1988 killing of his girlfriend and his related assault of his girlfriend's mother, who died shortly after sustaining injuries in the assault. The North Carolina courts rejected Cole's direct appeals and denied him post-conviction relief. Cole filed a petition for a writ of habeas corpus in U.S. district court, asserting a number of claims. The district court dismissed Cole's petition, and, pursuant to certificates of appealability, we consider three of his claims: (1) that he is mentally retarded and thus cannot be executed under the Eighth Amendment; (2) that he was sentenced to death on the basis of an aggravating circumstance that the jury was precluded from finding under the double jeopardy clause; and (3) that he was deprived of the effective assistance of appellate counsel. For the reasons that follow, we affirm the district court's denial of the writ.

I.

In 1988 Cole lived in Camden, North Carolina, with his girlfriend, Theresa Graham, and their two children, Rod and Assunta Graham. They lived with Theresa Graham's mother, Hattie

3

Graham, in a home owned by the latter. The events that led to Cole's convictions for the murder of Theresa Graham and the involuntary manslaughter of Hattie Graham occurred on June 22 and 23, 1988. The events of both days are described as follows by the North Carolina Supreme Court.

> Defendant [Cole] came home from work at around 5:30 p.m. on that evening [June 22]. Upon entering the house, he asked where dinner was and then hit Theresa [Graham] with his fist. Defendant then went outside, and Theresa followed him asking why he had hit her. Once outside, defendant began hitting Theresa again. Her mother [Hattie Graham] followed and attempted to stop defendant from striking her daughter. Defendant then struck [Hattie] Graham, who fell and hit her head against the door of defendant's automobile. Rod and [Theresa's twelve-year old cousin, William] Bowser[,] helped [Hattie] Graham into the house, and she called the police.
>
> When Deputies Lilly and Vick of the Camden County Sheriff's Department arrived at the Graham residence, defendant and Theresa were arguing. Theresa had a black eye and a bruised face. Theresa remained with the children while the deputies transported defendant and [Hattie] Graham in separate vehicles to the magistrate's office. At the magistrate's office, a warrant was issued for defendant's arrest for the assault of [Hattie] Graham. Defendant posted bond and was released with instructions that he not return to the Graham residence except to retrieve his automobile. Police officers accompanied defendant back to the residence to retrieve his automobile and stayed until defendant left shortly before midnight.

State v. Cole, 471 S.E.2d 362, 365-66 (N.C. 1996) (opinion on direct review). Despite the instructions that he not return to the Graham residence, Cole returned early the next morning (June 23). Thus,

4

Bowser stated that he was asleep on the couch when he heard a loud crash and saw defendant break through the back door. According to Bowser, defendant, armed with a .22-caliber rifle, snatched the telephone cord out of the wall, went to Theresa's bedroom, pulled Theresa from the bed, and shot her. Defendant kept beating Theresa as he dragged her into the dining room. Defendant then went into the kitchen, grabbed a knife, returned to the dining room, and began stabbing Theresa. At some point, [Hattie] Graham tried to intervene, and the defendant stabbed her. Defendant then took Theresa onto the porch and resumed stabbing her. He eventually stopped; yelled, "I told you I was going to kill you"; then left the Graham residence. After defendant left, Bowser reconnected the phone, and [Hattie] Graham called the Sheriff. After talking to Deputy Vick on the telephone, [Hattie] Graham stopped breathing [and soon died].

Id. at 366.

The police arrested Cole later that morning. The medical examiner determined that Theresa Graham had received more than one hundred stab wounds to her body, many of which were fatal. Hattie Graham had a single stab wound, scrapes, and bruises; the medical examiner determined that the cause of her death was a cardiac arrhythmia, or abnormal heart rhythm precipitated by stress. Cole was indicted on June 27, 1988, for the first degree murder of Theresa Graham and on October 17, 1988, for the second degree murder of Hattie Graham. The state sought the death sentence for the murder of Theresa Graham.

While waiting to stand trial, Cole demonstrated symptoms of depression and exhibited suicidal thoughts. He was admitted to Dorothea Dix Hospital on October 21, 1988, for an

5

evaluation of his competency to stand trial. A forensic psychiatrist at Dorthea Dix opined that Cole was competent to stand trial, and the hospital discharged him on November 11, 1988. While at Dorthea Dix, a psychologist administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) test to Cole. Cole scored a full scale I.Q. of 68, a verbal score of 71, and a performance score of 67 on the test. A full scale score of 70 is the threshold score associated with mental retardation. See N.C. Gen. Stat. § 15A-2005(a).

Cole's trial on both murder charges began on July 17, 1989, in the Superior Court of Camden County, North Carolina. At the close of the evidence, the trial court instructed the jury on first degree murder in connection with the killing of Theresa Graham. The court instructed the jury on second degree murder and involuntary manslaughter with respect to the death of Hattie Graham. Specifically, the court instructed the jury that it could not find Cole guilty of the second degree murder of Hattie Graham unless it found that Cole intentionally injured Hattie Graham and that Cole had exhibited malice, which the court further defined. According to the instructions, if the jury found that Cole acted unlawfully by committing misdemeanor assault and battery upon Hattie Graham, it could find Cole guilty only of involuntary manslaughter; it could not find that Hattie Graham was murdered in the second degree. The jury

6

returned verdicts on July 26, 1989, convicting Cole of the first degree murder of Theresa Graham and the involuntary manslaughter of Hattie Graham.

At the capital sentencing phase of Cole's trial, the court submitted two aggravating factors for the jury's consideration: (1) whether the murder of Theresa Graham was especially heinous, atrocious, or cruel, N.C. Gen. Stat. § 15A-2000(e)(9), and (2) whether the murder was part of a course of conduct in which Cole committed other crimes of violence against other persons, id. § 15A-2000(e)(11). Although the jury found ten of twelve mitigating circumstances that were submitted, it found both aggravating circumstances and recommended a sentence of death. Thereafter, court sentenced Cole to death for the first degree murder conviction and to ten years' imprisonment for the involuntary manslaughter conviction.

Cole appealed his convictions to the North Carolina Supreme Court, arguing among other things that the trial court had violated his unwaivable right to be present at unrecorded bench conferences during which the court had excused potential jurors. State v. Cole, 415 S.E.2d 716, 717 (N.C. 1992). Agreeing that Cole's right to be present at these conferences had been violated and that the error was not harmless beyond a reasonable doubt, the North Carolina Supreme Court reversed Cole's convictions and ordered a new trial. Id. at 718.

Cole was retried and was again convicted of the first degree murder of Theresa Graham and the involuntary manslaughter of Hattie Graham. At Cole's second capital sentencing proceeding, the jury found the same two aggravating circumstances, (1) that the murder of Theresa Graham was especially heinous, atrocious, or cruel, and (2) that it was part of a course of conduct in which Cole committed other crimes of violence against other persons. The jury also found nine of ten mitigating circumstances that were submitted. The jury again recommended death, and on June 13, 1994, the court sentenced Cole to death for the murder and to a concurrent two-year sentence of imprisonment for the involuntary manslaughter.

For the second time Cole appealed his convictions and sentences to the North Carolina Supreme Court. State v. Cole, 471 S.E.2d 362 (N.C. 1996). Cole made sixteen arguments on appeal, including the argument that the trial court erred by submitting for jury consideration the aggravating circumstance that the Theresa Graham murder was part of a violent course of conduct that included a crime of violence against another person. Id. at 372-73. Cole argued that there was insufficient evidence to establish a predicate crime of violence and that, moreover, Cole's assault on Hattie Graham was not part of a single course of conduct involving the capital murder. Id. He also argued that the trial judge gave unduly vague jury

8

instructions on the course of conduct aggravating circumstance. Id. at 373. Cole did not argue that the jury was collaterally estopped from finding the course of conduct aggravating circumstance under the double jeopardy clause. The North Carolina Supreme Court affirmed Cole's convictions and sentences, id. at 376, and the United States Supreme Court denied certiorari, Cole v. North Carolina, 519 U.S. 1064 (1997).

Cole pursued collateral relief in state court by filing a motion for appropriate relief (MAR) in the Camden County Superior Court on December 2, 1997. The MAR court held a hearing on Cole's claims of ineffective assistance of counsel and ultimately denied all of his claims. In particular, the MAR court denied Cole's claim that principles of collateral estoppel embodied in the double jeopardy clause barred the jury's consideration of the course of conduct aggravating circumstance. The MAR court also denied Cole's claim that he had received ineffective assistance of appellate counsel because counsel failed to raise the double jeopardy claim. The North Carolina Supreme Court denied his petition for certiorari review of the MAR court's decision. State v. Cole, 577 S.E.2d 900 (2003).

Several years after Cole's retrial and sentence, the North Carolina legislature enacted legislation (effective October 1, 2001) that prevents any defendant who is mentally retarded from being sentenced to death. N.C. Gen. Stat. § 15A-

9

2005.  The legislation made post-conviction relief available to capital defendants already convicted of first degree murder who could establish mental retardation, as defined in N.C. Gen. Stat. § 15A-2005. Id. § 15A-2006.  This legislation was enacted nearly a year before the Supreme Court held that the Eighth Amendment prohibits the execution of mentally retarded individuals.  See Atkins v. Virginia, 536 U.S. 304 (2002).  The new North Carolina legislation prompted Cole to file, on January 18, 2002, a motion in the Camden County Superior Court for imposition of a life sentence.  The court held an evidentiary hearing in May 2003.  Cole introduced his full scale score of 68 on the WAIS-R intelligence test administered October 31, 1988, at Dorthea Dix Hospital.  The state introduced evidence of two other intelligence tests in which Cole had higher scores:  Dr. Margaret Sells Emmanuelson had  administered the WAIS-R to Cole on July 25, 1989, and she reported a full scale I.Q. of 79, a verbal I.Q. of 82, and a performance I.Q. of 77.  Dr. Brian Grover had administered the WAIS-R to Cole in 1993, and Dr. Grover reported a full scale I.Q. of 81, a verbal I.Q. of 79, and a performance I.Q. of 83.  Cole offered evidence to impeach the two higher I.Q. test scores.  An expert witness testified that Cole's scores in 1989 and 1993 were suspect because of the "practice effect," that is, repeated administration of the same test inflated his scores.  J.A. 379, 281.  Moreover, the expert

10

indicated that he would not consider the 1989 WAIS-R test results valid because only nine of eleven relevant subtests were administered. In addition, the court considered the testimony of a number of witnesses who testified to Cole's scholastic abilities, his ability to communicate and interact in social settings, his personality, and his employment history. After considering the evidence, the court determined that Cole did not satisfy his burden of establishing mental retardation, as defined in N.C. Gen. Stat. § 15A-2005. Accordingly, the court denied his motion to impose a life sentence. The North Carolina Supreme Court denied Cole's petition for certiorari. State v. Cole, 601 S.E.2d 866 (N.C. 2004).

On July 5, 2005, Cole filed a petition for a writ of habeas corpus in U.S. district court, raising twenty-six claims. The district court denied the petition, holding that Cole had procedurally defaulted a number of his claims and that his remaining claims failed on the merits. Cole v. Branker, No. 5-05-HC-461-D (E.D.N.C. Sept. 20, 2007). Certificates of appealability were granted on three issues: (1) whether Cole is mentally retarded and therefore cannot be executed under the Eighth Amendment; (2) whether collateral estoppel, applicable in criminal proceedings through the double jeopardy clause, precluded the jury from finding the course of conduct

11

aggravating circumstance; and (3) whether Cole received constitutionally ineffective assistance of appellate counsel.

II.

The Supreme Court has held that the Eighth Amendment prohibits the execution of mentally retarded defendants. Atkins v. Virginia, 536 U.S. 304, 321 (2002). The Court, however, expressly left to the states the task of defining mental retardation. Id. at 317. In North Carolina mental retardation is defined as "[s]ignificantly subaverage general intellectual functioning, existing concurrently with significant limitations in adaptive functioning, both of which were manifested before the age of 18." N.C. Gen. Stat. § 15A-2005(a)(1). "Significantly subaverage general intellectual functioning" is further defined as an intelligence quotient of 70 or below. Id. § 15A-2005(a)(1). "Significant limitations in adaptive functioning" are deemed to exist when a person suffers significant limitations in two or more of the following skill areas: communications, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure skills, and work skills. Id. § 15A-2005(a)(1).

North Carolina enacted its definition of mental retardation prior to the Atkins decision but after Cole had been

12

convicted of first degree murder and sentenced to death. A separate North Carolina statute, N.C. Gen. Stat. § 15A-2006, authorized defendants such as Cole, already sentenced to death and in custody awaiting imposition of the death penalty, to seek appropriate relief on the grounds of mental retardation. It made relief from the death penalty available for those defendants who proved mental retardation, as defined in § 15A-2005. A defendant seeking relief under § 15A-2006 has the burden of proving mental retardation by a preponderance of the evidence. N.C. Gen. Stat. § 15A-2006; § 15A-1420(c); see also 2001 N.C. Sess. Laws 346, § 3 (providing text of N.C. Gen. Stat. § 15A-2006, which expired on October 1, 2002).

Cole applied under § 15A-2006 for relief from his death sentence in the Camden County Superior Court, and on August 19, 2003, the court determined that Cole failed to prove mental retardation by a preponderance of the evidence. Specifically, the court concluded that Cole failed to prove any of the three statutory elements of mental retardation: significantly subaverage intellectual functioning, significant limitations in adaptive function, or manifestation of mental retardation before the age of 18. See id. § 15A-2005(a).

Cole argues that the state court erred in failing to find him retarded under North Carolina law and Atkins. "[T]o prevail on the Atkins claim, [the petitioner] must show that he

13

should be deemed mentally retarded under North Carolina law." Conaway v. Polk, 453 F.3d 567, 591 (4th Cir. 2006). The Antiterrorism and Effective Death Penalty Act prescribes "a highly deferential standard for evaluating state-court rulings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006) (internal quotations omitted). Habeas relief is not available for claims adjudicated on the merits in state court proceedings unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, state determinations of factual issues are entitled to a presumption of correctness that is rebuttable only by clear and convincing evidence. Id. § 2254(e)(1).

Cole contends that the state court order adjudicating the mental retardation issue was cursory. While the state court did make extensive factual findings, Cole is accurate in one respect. The state court's conclusions were perfunctory, and the court did not explain in its conclusions why it discredited petitioner's evidence of mental retardation. The perfunctory conclusions do not change our legal analysis, however. While "a

14

detailed state court order is more likely to withstand federal judicial scrutiny," a conclusory state court order is still reviewed under 28 U.S.C. § 2254(d), and such an order is still entitled to deference. Wright v. Angelone, 151 F.3d 151, 156-57 (4th Cir. 1998); see also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000); Bell v. Jarvis, 236 F.3d 149, 159 (4th Cir. 2000).

Cole had the burden to prove all three elements necessary to establish mental retardation. If the state court correctly determined that Cole lacks significantly subaverage intellectual functioning (the first element), then its conclusion that Cole is not mentally retarded withstands review. As described above, "significantly subaverage general intellectual function," is defined as "an intelligence quotient of 70 or below." N.C. Gen. Stat. § 15A-2005.

Cole argues that the state court's decision involved an unreasonable application of clearly established Supreme Court law -- in this case the Atkins rule that a mentally retarded person may not be executed. To establish an "unreasonable application" of clearly established law, Cole must show that the state court applied Supreme Court precedent to the facts in an "objectively unreasonable manner." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008). Cole fails in this effort. We conclude, for the following reasons, that the state court's

15

conclusion that Cole did not prove significantly subaverage intellectual function was not objectively unreasonable.

Our court has held that it was not objectively unreasonable under Atkins for a state court to discredit a low I.Q. test score when three of four available I.Q. test scores exceeded the threshold score of 70. Green, 515 F.3d at 300. In this case Cole's score exceeded 70 on two of three individually administered intelligence tests. Cole received a full scale I.Q. test score of 79 on the 1989 WAIS-R test administered by Dr. Emmanuelson and a full scale I.Q. test score of 81 on the 1994 WAIS-R test administered by Dr. Grover.

Cole attempted to impeach the credibility of the two individually administered intelligence tests on which his score exceeded 70 by offering evidence that those scores could be inflated by a "practice effect" (the benefit of having taken a test more than once) or the "Flynn effect" (the benefit of gaining intelligence over time). J.A. 380-81, 726-27. This evidence does not render the state court's conclusion objectively unreasonable, however. The I.Q. test score on which Cole scored below the statutory threshold of 70 was barely below it; he scored 68 on the test administered in 1988. In comparison, Cole scored nearly ten points above the threshold of 70 on his two later tests; he scored 79 and 81 on the tests administered in 1989 and 1993, respectively. Moreover, Cole

16

offered no evidence to show that the practice effect of taking one prior I.Q. test could have accounted for an increase in his score nine months later by as much as eleven points, or sixteen percent. For these reasons, we conclude that it was not objectively unreasonable for the state court to determine that Cole failed to prove an I.Q. below 70, which meant that he did not have significantly subaverage general intellectual functioning. This determination is sufficient to establish that Cole did not prove he is mentally retarded. Accordingly, we need not review the state court's determinations that Cole failed to establish the other two elements necessary for mental retardation: significant limitations in adaptive functioning and manifestation of this limitation and an I.Q. of 70 or below before age 18. The determination that Cole failed to establish the elements of mental retardation is not contrary to, or an unreasonable application of, clearly established law, as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1).

Nor was the state court's conclusion that Cole failed to establish mental retardation based on an unreasonable determination of the facts, as Cole contends. See 28 U.S.C. § 2254(d)(2). A state court's factual determinations are presumed correct unless the habeas petitioner rebuts the presumption with clear and convincing evidence. Id. § 2254(e)(1); Green, 515 F.3d at 299; Lenz, 444 F.3d at 300.

17

The "criterion of a reasonable determination [of the facts] is [not] whether [the state opinion] is well reasoned. . . . It is whether the determination is at least minimally consistent with the facts and circumstances of the case." Wright, 151 F.3d at 157 (quoting Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997)). The facts and circumstances in the record, as discussed above, are more than minimally consistent with a determination that Cole had an I.Q. greater than 70. Thus, the state court's determination that Cole did not prove mental retardation was not based on an unreasonable determination of the facts. In sum, Cole is not entitled to habeas relief under the standards of § 2254(d).

### III.

Cole argues that his rights under the double jeopardy clause of the Fifth Amendment were violated. Specifically, he invokes the doctrine of collateral estoppel embodied in the double jeopardy clause. The Supreme Court has held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). Cole argues that he is entitled to habeas relief because an issue of ultimate fact determined in his favor by a valid and final judgment in 1989 -- the issue of whether he

18

intended to injure Hattie Graham –– was relitigated to his disadvantage in 1994.

Cole argues that the jury in his 1989 trial acquitted him of any intent to inflict harm with respect to the death of Hattie Graham when it found him guilty of involuntary manslaughter, but not second degree murder. Thus, according to Cole, his (second) 1994 jury was collaterally estopped from finding that he acted with intent to injure Hattie Graham in either the guilt or sentencing phases of the trial. Yet the capital sentencing jury in his second trial was permitted to find (and did find), as an aggravating circumstance, that Theresa Graham's murder was "part of a course of conduct in which [Cole committed] other crimes of violence against another person or persons." N.C. Gen. Stat. § 15A-2000(e)(11). Cole argues that this course of conduct aggravating circumstance was necessarily predicated on the jury finding a fact –– his intent to injure Hattie Graham –– that his first jury did not find when it acquitted him of the second degree murder of Hattie Graham.

A.

We conclude that Cole procedurally defaulted his double jeopardy claim and is thus barred from obtaining federal habeas relief on this ground. A state prisoner who has procedurally defaulted a claim on an adequate and independent

19

state ground is barred from obtaining habeas relief on that ground unless the prisoner can show cause for the default and actual prejudice as a result of the violation of federal law, or prove that the failure to consider the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). Cole first claimed a violation of the double jeopardy clause in state MAR court on collateral review. The MAR court rejected the double jeopardy claim as procedurally defaulted under N.C. Gen. Stat. § 15A-1419(a)(3)(1997), which we have held to be an adequate and independent state ground for purposes of a procedural default. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008).

Cole attempts to show cause and prejudice sufficient to excuse his procedural default. To demonstrate cause, Cole argues that he received ineffective assistance of appellate counsel in violation of the Sixth Amendment. Specifically, he argues that his appellate counsel was constitutionally inadequate because counsel failed to raise the double jeopardy argument. The Supreme Court has "acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice" to establish cause for a procedural default. Edwards, 529 U.S. at 451. The circumstances in which counsel's ineffectiveness can

20

provide cause that excuses a procedural default are limited, however.

First, the petitioner must not have defaulted on the independent claim of ineffective assistance of counsel. Id. at 451. In this case, Cole did not default his ineffective assistance claim. It was timely raised on state collateral review and dismissed on the merits.

Second, counsel's assistance must be constitutionally defective under Strickland v. Washington, 466 U.S. 668 (1984). Murray v. Carrier, 477 U.S. 478, 488 (1986). Constitutionally defective assistance has two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To establish defective performance, the petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" judged by "prevailing professional norms." Id. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see Lawrence v. Branker, 517 F.3d 700, 708 (4th Cir. 2008); Williams

21

v. Ozmint, 494 F.3d 478, 484 (4th Cir. 2007).  Cole argues that appellate counsel's failure to challenge the course of conduct aggravating circumstance under the double jeopardy clause was objectively unreasonable.  This argument ignores, however, that counsel need not raise every colorable claim on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  Rather, counsel has some latitude to "decide what issues are to be pressed" on appeal. Id. at 751, 754.

In this case appellate counsel raised a number of issues on appeal.  In particular, counsel mounted a vigorous challenge to the course of conduct aggravating circumstance on grounds other than double jeopardy.  Counsel argued that Cole's involuntary manslaughter conviction was not supported by the evidence, yet may have provided the basis for the course of conduct aggravating circumstance found by the jury.  The reversal of Cole's death sentence was therefore required, according to counsel.  Appellate counsel also argued that the trial judge gave unduly vague jury instructions on the course of conduct aggravating circumstance.  State v. Cole, 471 S.E.2d 362, 373 (N.C. 1996).  In total, appellate counsel made sixteen arguments on appeal.  Id. at 365.  Especially in light of the rule that counsel need not raise every colorable claim on appeal, Jones, 463 U.S. at 754, appellate counsel's thoroughgoing arguments with respect to the course of conduct

22

aggravating circumstance and fifteen other assignments of error are significant. It was not objectively unreasonable for appellate counsel to focus his arguments challenging the course of conduct aggravating circumstance to two, focused legal grounds rather than pursuing additional grounds. "A brief that raises every colorable issue runs the risk of burying good arguments." Jones, 463 U.S. at 753. We conclude that appellate counsel performed "within the wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689; Jones, 463 U.S. at 754.

Cole submits an affidavit by appellate counsel in which he states that his failure to raise the double jeopardy argument was not, in fact, a strategic decision. Rather, the argument simply "did not occur to [counsel]." J.A. 911. "[T]he relevant question," however, "is not whether counsel's choices were strategic, but whether they were reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000). It was not unreasonable for counsel to focus his arguments challenging the course of conduct instruction to the two areas mentioned above. Again, counsel need not raise every colorable issue on appeal, for "[a] brief that raises every colorable issue runs the risk of burying good arguments." Jones, 463 U.S. at 753. In the circumstances here, appellate counsel performed "within the wide range of professional assistance." See Strickland, 466 U.S. at

23

689. Because Cole received the effective assistance of counsel on appeal, we need not consider the prejudice element. In sum, Cole's procedural default of the double jeopardy claim cannot be excused on grounds of cause and prejudice.

In the alternative, Cole argues that his procedural default ought to be excused because otherwise there would be a fundamental miscarriage of justice; he claims that he is actually innocent of the death penalty. "To be actually innocent of the death penalty, the petitioner must prove by clear and convincing evidence that but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997) (characterizing standard from Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992)). In this case, the jury found two aggravating circumstances: that the capital felony was especially heinous, atrocious, or cruel, N.C. Gen. Stat. § 15A-2000(e)(9); and that the murder was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person, N.C. Gen. Stat. § 15A-2000(e)(11). Even if the double jeopardy clause prevented the jury from considering the latter circumstance, N.C. Gen. Stat. § 15A-2000(e)(11), petitioner has still not proved by clear and convincing evidence that no reasonable jury would have recommended a sentence of death. A

24

jury could have returned a recommendation of death based exclusively on its conclusion that the murder was "especially heinous, atrocious, or cruel," N.C. Gen. Stat. § 15A-2000(e)(9). See Sawyer v. Whitley, 505 U.S. 333, 348-50 (1992) (determining that existence of independently sufficient aggravating circumstance prevented court from finding that "no reasonable juror would have found [petitioner] eligible for the death penalty"). Thus, Cole fails to demonstrate a fundamental miscarriage of justice sufficient to excuse his procedural default.

We are satisfied that Cole's double jeopardy claim was procedurally barred under North Carolina law. We nevertheless proceed to discuss the merits of the issue.

B.

We conclude that Cole also fails to qualify for relief on the merits of his double jeopardy claim. The Supreme Court has recognized that the Fifth Amendment's guarantee against double jeopardy embraces the doctrine of collateral estoppel. Collateral estoppel prevents the relitigation of issues of ultimate fact that have been determined by a valid and final judgment between the same parties. Ashe v. Swenson, 397 U.S. 436, 443 (1970). As described above, Cole argues that he was found to lack any intent to injure Hattie Graham when his first

25

jury acquitted him of second degree murder and found him guilty, instead, of involuntary manslaughter. Cole argues that at his second, 1994 trial the intent to injure Hattie Graham issue was impermissibly relitigated when the jury was allowed to find the course of conduct aggravating circumstance.

Cole submitted his collateral estoppel claim to the state MAR court, which held that he had procedurally defaulted the claim, and, in the alternative, rejected the claim on the merits. Under § 2254(d) habeas relief is not available unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The Court has clearly established that the double jeopardy clause incorporates the doctrine of collateral estoppel in the guilt phase of criminal proceedings, but it has never addressed whether collateral estoppel might preclude a jury from finding an aggravating circumstance in the sentencing phase of a proceeding. In fact, the Supreme Court expressly left that question open in Schiro v. Farley, 510 U.S. 222, 232 (1994) ("We do not address whether collateral estoppel could bar the use of the 'intentional' murder aggravating circumstance . . . ."). Because of the lack of any clearly established federal law, as

26

determined by the Supreme Court, on this issue, Cole is not entitled to habeas relief.

Moreover, like the petitioner in Schiro, Cole has not met his burden of establishing the factual predicate for applying collateral estoppel. Even assuming that collateral estoppel does apply in this context, Cole has not established that an "'issue of ultimate fact has once been determined' in his favor." Schiro, 510 U.S. at 232 (quoting Ashe, 397 U.S. at 443). The burden is on Cole "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Schiro, 510 U.S. at 233 (quoting Dowling v. United States, 493 U.S. 342, 350 (1990)). Cole fails to meet this burden. He does not show that he was acquitted of any intent to harm Hattie Graham in his first trial in 1989. Cole was acquitted of the second degree murder of Hattie Graham, which is defined as "the unlawful killing of a human being with malice but without premeditation and deliberation." State v. Greene, 336 S.E.2d 87, 88 (N.C. 1985). The 1989 jury was instructed that it could only find Cole guilty of the second degree murder of Hattie Graham if it determined that the government had proved several elements beyond a reasonable doubt. The jury had to find that Hattie Graham received a fatal injury that proximately caused her death. The jury also had to find that Cole intentionally inflicted this injury upon Hattie

27

Graham.  Finally, the jury was instructed that it had to find beyond a reasonable doubt that Cole acted with malice.

> To find that the defendant acted with malice you need not find that he intended to kill Hattie Graham. But you must find beyond a reasonable doubt that his acts were so reckless or wantonly done as to indicate a total disregard of human life.  If the State fails to satisfy you beyond a reasonable doubt that the defendant acted with malice in connection with the death of Hattie Graham, the defendant can be guilty of no more than involuntary manslaughter.

J.A. 26-27.  When there are several explanations for the acquittal verdict, the defendant fails to satisfy his burden of proving an issue was actually decided.  Dowling, 493 U.S. at 352.  Here, the instructions reveal that there are several potential explanations for Cole's acquittal verdict on the second degree murder charge with respect to Hattie Graham.  The jury may have found that Cole did not intentionally injure Hattie Graham.  Or, it may have found instead that he did intentionally injure Hattie Graham, but that he did not do so with malice.  As a result, Cole cannot establish that the issue of whether he intentionally injured Hattie Graham was actually decided by his first jury.

The trial court's instructions to the 1989 jury with respect to the involuntary manslaughter charge further suggest that the jury may not have concluded that Cole lacked any intent to harm Hattie Graham.  The theory of involuntary manslaughter submitted to the jury contemplated that Cole was acting with

28

intent to harm Hattie Graham but not so recklessly or wantonly as to indicate a total disregard for Hattie Graham's life. The trial court instructed the jury that a conviction of involuntary manslaughter required the state to prove that "the defendant acted unlawfully by intentionally committing an assault and battery upon Hattie Graham which caused physical injury to Hattie Graham." J.A. 27. Cole argues that under North Carolina law involuntary manslaughter cannot encompass an intent to injure. This may be a correct statement of North Carolina law, but it was never communicated to the 1989 jury. That jury was expressly instructed that it could find that Cole intentionally committed an assault and battery upon Hattie Graham and yet acquit him of second degree murder. Accordingly, the 1994 jury was not collaterally estopped from finding that Cole acted with intent to harm Hattie Graham.

## IV.

Cole finally claims that he received ineffective assistance of appellate counsel, which independently entitles him to habeas relief. He argues that appellate counsel's failure to raise the double jeopardy issue deprived him of effective assistance. We reject this claim. Because his claim has been adjudicated on the merits in state court (the MAR court rejected it), § 2254(d) limits habeas relief. No relief is

29

available unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1),(2). As we conclude in part III.A, supra, appellate counsel's representation did not "f[all] below an objective standard of reasonableness" as judged by "prevailing professional norms." Strickland, 466 U.S. at 688. The MAR court therefore did not engage in an unreasonable application of Strickland when it rejected Cole's claim of ineffective assistant of appellate counsel.

V.

The district court's order dismissing Cole's petition for writ of habeas corpus is

AFFIRMED.

30